JOSEPH MASSOPUST and JOHN KUTCHER

*v.*

LEMBECK & BETZ EAGLE BREWING COMPANY (now NEW JERSEY REFRIGERATING COMPANY).

[Submitted October 9th, 1922.   Decided October 21st, 1922.]

A note of a saloon keeper to a brewer which was given when he took over the saloon on account of fixtures therein belonging to the brewer, but which, according to agreement and custom he was not to be called on to pay so long as he bought beer from the brewer, will not be converted into an absolute promise to pay and enforcement permitted on prohibition going into effect, because when the performance of the contract to buy beer became unenforceable, the penalty for non-performance also became unenforceable.

On bill, &c.

*Mr. Thomas Brown,* for the complainants.

*Mr. D. Eugene Blankenhorn,* for the defendant.

FOSTER, V. C.

Complainants seek to have defendant restrained from prosecuting an action at law on a promissory note given by them to defendant for $2,025.25, on the ground of an alleged oral agreement between the parties that complainants were not to be liable for the payment of the note, nor the chattel mortgage given as security therefor, unless they refuse to

purchase the lager beer of the defendant at a fair market price, and on the further ground of a custom existing in the dealings of defendant with other saloon owners in Perth Amboy, which custom was to relieve such saloon keepers from the payment of similar notes and mortgages.

The note and chattel mortgage were given under the following circumstances: On March 21st, 1917, complainants purchased the saloon and hotel business of one George C. Hriczko, in Perth Amboy, for $28,500, and on the same day they signed the promissory note in question, which is payable on demand, and also executed the chattel mortgage on the saloon fixtures to secure the payment of this note. It appears that said George C. Hriczko had been engaged in the saloon business in Perth Amboy for many years, and that in 1908 he was a customer of the Central Brewing Company. On June 17th, 1908, defendant purchased from the Central Brewing Company its claim against Hriczko, consisting of a chattel mortgage on his saloon fixtures and his note for $1,000. Between 1908 and 1912 additions and repairs were made by defendant to these fixtures at a cost of $898.25, and on January 19th, 1912, Hriczko gave defendant a new note and chattel mortgage for $1,898.25, and between 1912 and 1915 further repairs or additions were made by defendants to the fixtures at a cost of $127, making the total of the alleged indebtedness due on June 30th; 1915, from Hriczko to defendant, $2,025.25, which is the amount of the note in suit, and admittedly the payment of neither the principal nor interest of this indebtedness had ever been demanded from Hriczko during all the years he was in business and purchased and sold the products of defendant. Defendant claims this sum represents the true value of the fixtures at the time complainants purchased the business, while complainant's proof shows that a substantial part of the fixtures were second hand when Hriczko acquired them, about sixteen years ago; that some of them were rather useless, and that some of them had been removed to this saloon after considerable use in other saloons, and that at the date of this transaction these fixtures were worth about $500.

The complainant Massopust has lived in Perth Amboy for about thirty-seven years; for about ten years he conducted a saloon and purchased his beer from defendant; later he engaged in the real estate business, and as a broker he has sold twenty-five or more saloons in Perth Amboy, or its vicinity, that were doing business with defendant; that he has known William F. Thiele, the agent of defendant, for over fifteen years, and has had dealings with him in effecting the sale of saloon properties.

The other complainant Kutcher was the agent or collector of the defendant for over twenty-three years, and he continued in defendant's employ for about a year and a half after the purchase of this saloon and hotel business. Thiele was his immediate superior and was called his boss, and he and Thiele for years had the most intimate business relations.

Both complainants testify that for years they were familiar with the practice of defendant to furnish chattels to be used in the saloon business, where the beer manufactured by defendant was sold; that defendant made it a practice to charge for the fixtures thus installed, as well as for all additions and repairs to the same, and also for the money which defendant sometimes advanced, and that the amount thus charged was represented by a promissory note of the saloon keeper, payable on demand and secured by a chattel mortgage on the fixtures; that it was also the practice of defendant never to ask for the payment of such notes and mortgages so long as the saloon keepers continued to sell defendant's products; that the indebtedness thus represented was considered the indebtedness of the place and not of the proprietor of the saloon, and that a purchaser of a saloon was expected to assume this indebtedness by his own note and mortgage on the like understanding about his liability for their payment.

With these practices of the defendant in mind, complainants agreed, in January, 1917, to purchase the saloon business and property of Hriczko, and to assume his indebtedness to defendant for the fixtures. At this time, defendant held a mortgage for $10,000 on the hotel property and also held

Hriczko's note and chattel mortgage on the fixtures for $1,895.25. Defendant accepted payments from complainants, which reduced its real estate mortgage to $7,000, and consented to make this amount subject to a first mortgage of $15,000, which complainants borrowed to buy the property, and when the transaction was closed, in March, 1917, complainants gave defendant the real estate mortgage for $7,000, and the note and chattel mortgage in suit. On June 19th, 1919, defendant demanded the immediate payment of the balance due on the $7,000 mortgage, and three days later began proceedings to foreclose this mortgage.

Complainants testify that before signing the note and chattel mortgage they were assured by both Mr. Thiele and Mr. Lembeck that the usual practice respecting the note and chattel mortgage would continue, and that Thiele told Kutcher, complainants would have to give the note and chattel mortgage, and when Kutcher told him it wasn't necessary, Thiele said it was, "so we can show something to keep our books and things like that in the office straight," and further, "that we have got to have something to show when you sell it again, this goes over to the next man. You have nothing to do with it. As soon as you sell out again, we turn it over to the next man." Thiele further told him that so long as complainants dealt with defendant at the market price, and sold their products, there would be no demand made for the payment of the note and chattel mortgage. Thiele denies having made these representations, and defendant attempted to show that if Thiele ever made them, it was after complainants had agreed, in January, to purchase the property and business; and also to show that if Thiele ever made these representations, he was without authority to do so. I find the proofs convincing that Thiele made these representations to induce complainants to sign the note and chattel mortgage, and that he was acting within the scope of his authority in doing so. The record also shows that no serious effort was made by defendant to contradict complainants' evidence of its practice to refrain from collecting such notes

and chattel mortgages so long as the saloon keeper sold its products.

From the date of the purchase complainants continued to perform this agreement by dealing only in the products of the defendant. In March, 1918, as a result of federal regulations limiting the use of cereals and coal, all of the brewery's customers were rationed, and the price was increased to $9 for a half barrel of beer. When complainants learned they were being charged $17 a barrel, $2 of which was being credited on the chattel mortgage, they objected; and when defendant ceased making any deliveries of its beer or other products, complainants then, for the first time, purchased beer from other breweries. And finally, when, as a result of the adoption of the prohibition amendment and the enactment of the Volstead act, it became impossible for complainants to legally perform their agreement to purchase and sell defendant's products, payment was thereupon demanded of the mortgage on their real property and of this note and chattel mortgage.

The bill has evidently been framed to bring the case within the rule stated in *O'Brien* v. *Paterson Brewing and Malting Co., 69 N. J. Eq. 117,* and later in *Gallagher* v. *Lembeck & Betz Eagle Brewing Co., 86 N. J. Eq. 188,* and I find the proofs to establish the allegations of the bill, relating to the practice of the defendant, and its custom in the trade not to enforce the payment of notes like the one in suit; and I also find the evidence to establish the representations which were made by the defendant's agent to induce complainants to execute the note in question.

It is quite apparent from the record that payment of this note was never to be demanded, and certainly not so long as complainants continued to purchase the products of defendant's brewery. When prohibition made further performance of this agreement by complainants, as well as the defendant, impossible, defendant, then for the first time, sought to make absolute a conditional promise of payment. To permit the consummation of this purpose would clearly be

inequitable, for, as the law itself prevents complainants from performing their agreement, it necessarily follows that the law also relieves them from a lawful promise that it would now be unlawful for them to perform, and also relieves them from any liability or penalty for non-performance under such circumstances.

As neither the title of defendant to the saloon fixtures nor the right of defendant to foreclose its chattel mortgage is questioned in these proceedings, and as the proofs clearly sustain complainants' contention respecting the purpose for which this promissory note was given, I will advise that the restraint prayed for be granted.