STATE OF IOWA ex rel. HARRY LOWN, appellant, v. CITY OF IOWA FALLS et al., appellees.

No. 48753.

(Reported in 74 N.W.2d 594)

FEBRUARY 7, 1956.

John F. Wirds and John P. Whitsell, both of Iowa Falls, for appellant.

DuWayne J. Wessels, of Iowa Falls, for appellees.

SMITH, J.—Relator's property, upon which he desires to build a residence, lies along the easterly side of the Iowa River which runs southeasterly through defendant city. The proposed building site is said to be on a "scenic promontory" overlooking the river; but it is, nevertheless, more than two feet *lower than*, and 152 feet *distant from*, the nearest city sewer.

His deed describes "all available land" in city block 44, 264 feet deep, and part of an abandoned street adjoining. Most of the block lies under water. The part that would probably be called "available" is roughly described in the findings of the trial court as a "right triangle with approximately 172 feet of frontage on the street and 86 feet of depth on the left side coming down to a point on the right."

Relator testifies that before buying the premises he went (in March 1952) to the then city manager, Forrest Duggan (since deceased) who informed him of the situation of the premises as to lack of access to sanitary sewer. He says: "I told him I would disregard buying the lot, I wanted a sewer. He told me it would be all right to put in a septic tank on that lot." Relator bought the premises April 7, 1952.

Approximately two years later he and his wife decided to build a home. He consulted the State Sanitary Engineer as to the kind of septic tank he should put in and employed a contractor (Mr. Straley) who drew plans for the house. "Up to this time I had no reason to doubt but what I could put in a septic tank." This was in 1954, apparently in March.

After "spacing the house on the lot" he and Mr. Straley went to the office of city manager and clerk, Paul L. White (who had succeeded Mr. Duggan) and for the first time learned the city officials would not allow installation of a septic tank in lieu of connection with the city sewer. He testified Mr. White told him, " 'You can't do it. If you don't believe it, take us to court.' "

There seems to have been some discussion also as to other impediments under the zoning law, concerning size of lot and location of the house on the premises: "Mr. White said he could see no reason why we could not set the house closer to the front lot line. * * * Mr. White made no comment about the rear yard. * * * He said no more septic tanks could be put in, they were not allowing them."

Relator then went to the city attorney "about a petition for sewer, which I presented to the city council and they acted on it a few days later." He was informed they "refused it unanimously." He says a councilman advised him: "It was the decision of the city council that I hook up to the existing sewer, which ends approximately * * * 152 feet and 7 inches south of my lot." That would have meant expense of sewer extension and a pump or lift in order to connect, estimated at over $1000, according to relator's testimony. He says the estimated cost of septic tank was $201.95.

On March 12, 1954 (according to the trial court's finding), he applied for a building permit: "At that time Ordinance 171 was in effect regulating the uses to which certain areas may be put and prescribing the size of lots, yards, etc. * * * It is practically impossible for plaintiff to comply with these requirements unless the area under the river is taken into consideration, but an appeal board within the city has authority to waive the requirements under certain circumstances." (Relator fixes this date as March 18. The exact date is immaterial.) The real reason

for denying the building permit seems to have been the sewer situation. No appeal was taken by relator to the zoning appeal board.

After refusing relator's petition that the city extend the sewer to his premises, the city council (on April 14, 1954) adopted Ordinance 198 which by its terms would deny relator any right to install a septic tank.

On or about March 31 he filed application a second time for a building permit. He says the first application had been marked "refused as per instructions by the city council."

On this second occasion, according to his testimony, there was no discussion as to yard-clearance provisions of the zoning Ordinance 171: "* * * there never was any question about anything but the sewer question at that time." The permit was again refused.

The prayer of relator's petition is for a writ of mandamus ordering defendants to issue him a building permit. It was filed April 24, 1954, and denied on June 10. We assume relator's notice of appeal was duly filed though the record does not say so. It does however show several extensions of time for taking the necessary steps to bring the matter here. It thus indirectly does show an appeal was taken by relator.

■ Appellant's five numbered "propositions relied on" are not legal propositions. They complain of the city manager's antagonistic attitude, assert that he "wavered" in his objections to the application for building permit until the ordinance regulating septic tanks could be passed, and claim that, when passed, it was so drawn as to be effective only against relator's premises.

Relator's opening brief utterly fails to comply with rule 344, R. C. P. Its "Questions presented by this appeal" and its purported statement of the "Issue" give little help in getting at the legal controversy involved.

The "Statement of facts" following the "Propositions relied on" constitutes the only opening argument. It includes fifty-eight pages virtually reprinted from the record, largely in question-and-answer form, with interspersed argumentative comments by counsel, not always readily distinguishable from the testimony. These comments frequently begin with the words "Here again"

562

(or similar expression) which in such case do serve to separate *comment* from record.

There is no formal or orderly brief of authorities as by rule required nor any formal argument of the "propositions"— only a somewhat rambling 18-page discussion of the court's findings and conclusions and cases cited by the trial court, and a mention of some cases the trial court might have cited. The whole document ("Appellant's Brief and Argument") would probably have had to be stricken had a motion to that end been filed.

█ Nevertheless the record does reveal a situation that requires our consideration. We are not disposed to decide the case on formal technicalities. The trial court analyzes the issues thus:

"The city contends that plaintiff may not have a permit (1) because of the septic tank ordinance (No. 198) and (2) because the backyard is not as deep as the zoning ordinance requires.

"The septic tank ordinance in turn presents three problems: (a) can a council pass an ordinance which affects applications then on file? (b) is the ordinance discriminatory? and (c) did the city have power to enact the ordinance?"

We shall here disregard (2) above since there was no appeal to the zoning board and there is no indication plaintiff desires a building permit except upon terms that would relieve him of the considerable expense of connecting with the city's sanitary sewer, as at present situated. If the validity of Ordinance 198 is to be upheld as applied to plaintiff's premises, it must be conceded the city zoning board could not waive its requirement; if on the other hand it be held that its denial of the right to install a proper septic tank is, under the circumstances, an abuse of discretion, then reasonable and necessary waiver of lot requirements of the zoning ordinance might, in the discretion of the zoning board, permit plaintiff to build.

█ I. Occasionally through the record plaintiff seems to claim something for the fact that city manager Duggan in 1952 advised him "it would be all right to put in a septic tank in that lot"; and to claim he bought the premises on the strength of that assurance. This would fall far short of giving him a vested right

or of estopping the city from changing its ordinance. See Huff v. City of Des Moines, 244 Iowa 89, 94, 56 N.W.2d 54; Spector v. Building Inspector, 250 Mass. 63, 145 N.E. 265, 268.

Of course all the city manager did or could do at that time was to inform him of the city's then policy. Such information could not estop the city from thereafter changing its attitude as to septic tanks. Plaintiff had no greater right than any other property owner to claim exemption from the effect of such change.

II. Nor can there be any serious question of a city's right and duty to enact *reasonable* regulations concerning disposal of sewage in the interest of the health and cleanliness of the city, including power to require an abutting landowner to connect his buildings with a public sewer. Such regulation is a valid exercise of police power. Fenton v. Atlantic City, 90 N. J. L. 403, 103 A. 695; 64 C. J. S., Municipal Corporations, section 1805b, notes 67, 68, and cases cited; 9 Am. Jur., Buildings, section 14, note 5, and cases cited. See also section 413.33, Iowa Code, 1954.

III. A graver question presented pertains to the reasonableness of Ordinance 198. It provides: "Septic tanks may be installed only when the city sanitary sewer is not within 300 feet of the nearest point of the lot upon which the house is to be located. The lot shall have an area of 17,404 square feet or more. Installation shall be paid for by the property owner interested in the connection to the sewer. * * *."

In the preceding division we italicized the word "reasonable" as applied to ordinance of this character. That qualification of the city's power is implicit in every statement of the rule we have seen.

In Harlan v. Town of Bel Air (1940) 178 Md. 260, 269, 13 A.2d 370, 374, the opinion, after citing authorities to the broad general proposition, held that since plaintiff's property "does not abut on Choice Street, and it would be unreasonable and unjust to compel the appellant to connect the dwelling with the sewer in Hickory Road, the order of the chancellor must be reversed."

The court in State ex rel. v. City of Miami (1946) 157 Fla. 726, 741, 27 So.2d 118, 124, 127, holds the reasonableness or unreasonableness of an ordinance requiring premises to be con-

nected with a sanitary sewer in an abutting street must depend largely and may depend entirely upon the character of the terrain of the area affected. See also State ex rel. v. City of Daytona Beach (1948) 160 Fla. 204, 207, 34 So.2d 309, 311.

We are not here discussing a bare question of the constitutionality of regulations such as Ordinance 198, except as there is involved, as here, the question of its *reasonableness*. The trial court cites Hutchinson v. City of Valdosta (1913) 227 U. S. 303, 308, 33 S. Ct. 290, 292, 57 L. Ed. 520. The opinion in that case says: "It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. * * * It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health."

The Massachusetts court in Commonwealth v. Abbott (1894) 160 Mass. 282, 35 N.E. 782, upheld a conviction for defendant's failure to connect his building with a public sewer on an *adjoining* street, even though it (the sewer) ran in part through private land.

In Schmidt v. Village of Kimberly (1953) 74 Idaho 48, 62, 256 P.2d 515, 523, the Idaho Supreme Court held valid an ordinance requiring the landowner to connect buildings within 150 feet of a sewer line was not unreasonable nor in violation of any constitutional provision but said: "The power of the municipality in this respect being recognized, the validity of the particular requirement depends upon its reasonableness as applied to a particular individual or class."

The Iowa legislature apparently had in mind a question of reasonableness when it enacted section 413.33, Code of 1954: "No multiple dwelling shall hereafter be erected unless there is accessible city water and a public sewer, or a private sewer connected directly with a public sewer. No cesspool * * * shall be used in connection with any dwelling where connection with a public sewer is practicable."

■ IV. The case must stand or fall on the legality of Ordinance 198. In order to succeed here relator must establish that it constitutes "an arbitrary exercise" of police power. This, under the record, he has failed to do.

In a somewhat recent case the Kentucky Supreme Court said: "The exercise of police powers by any government in a proper case marks the growth and development of the law rather than a tyrannical assertion of governmental powers denied by our Constitution or any other superior authority. * * *." Nourse v. City of Russellville, 257 Ky. 525, 531, 78 S.W.2d 761, 764.

It may be conceded the case some years ago might have been considered close. But the decision of the trial court must be affirmed if we are to abide by the present weight of authority.

We have cited various authorities which we think are persuasive. Probably others might be added, e. g., Bigler v. Greenwood, Utah, 254 P.2d 843, 846; City of Mountain Home v. Ray, 223 Ark. 553, 267 S.W.2d 503, 506; Fristoe v. City of Crowley, 142 La. 393, 76 So. 812, L. R. A. 1918C 254.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.