55 N.J. Super. 320 (1959)
150 A.2d 799
TREMARCO CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-RESPONDENT,
v.
JOHN A. GARZIO, BUILDING INSPECTOR OF THE TOWNSHIP OF EWING IN THE COUNTY OF MERCER AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EWING IN THE COUNTY OF MERCER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1959.
Decided May 4, 1959.
*321 Before Judges PRICE, CONFORD and GAULKIN.
Mr. Benjamin Forer argued the cause for defendants-appellants.
*322 Mr. George H. Bohlinger, Jr. argued the cause for plaintiff-respondent (Messrs. Minton, Dinsmore & Bohlinger, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This action in lieu of prerogative writ was submitted to the Superior Court, Law Division, upon a stipulation of facts and cross-motions for summary judgment. Summary judgment was entered in favor of plaintiff, ordering defendants to "forthwith re-issue to the plaintiff, Tremarco Corporation, a building permit for the erection of a two bay gasoline service station." Defendants appeal.
Defendants admit that on June 25, 1957 the township building inspector issued to John J. Boscarell, the then owner of the premises in question, a valid building permit for the construction of a service station in an area in which the township zoning ordinance, passed in 1950, permitted such use.
Since the parties base their respective positions upon the stipulated facts, we shall quote the essential portions thereof:
"5. The existence of the permit made the property worth more than it would be worth as a location for other business and worth much more than its value for residential purposes.
6. Relying on the existence of the permit and the provisions of the ordinance under which it was granted, the plaintiff agreed to purchase the premises from John J. Boscarell for $21,500.00.
7. Plaintiff is a corporation whose sole function is to acquire sites for gas service stations for Gulf Oil Corporation and except for the availability of the premises in question for the service station proposed, plaintiff would have had no interest in it.
8. The * * * building code of Ewing Township * * * provides that any permit issued thereunder is automatically revoked if the work covered thereby is not actually commenced within three months next after the date on which such permit shall have been issued.
9. Title to the premises passed from John J. Boscarell to plaintiff on October 2, 1957.
10. Prior to the passing of title * * * the parties or their agents, secured from the building inspector of Ewing Township [then Alexander Savonick] his assurance that the permit could *323 be considered as renewed. Based on such assurance title was passed and full consideration was paid.
11. On October 8, 1957 [the] Building Inspector, * * * in accordance with his commitment, issued a renewal of the permit for an additional ninety days. * * *
12. Prior to the expiration of the renewed ninety day period [on January 2, 1958] plaintiff again applied to the same building inspector for the reissuance or renewal of the building permit for an additional ninety days. The renewals were granted in the name of Gulf Oil Corporation, the plaintiff's principal.

* * * * * * * *
14. During the period of the renewals of the permit, the plaintiff spent $145.00 for a survey, $647.16 for architect's fees, and [on March 3, 1958] entered into a contract with South Jersey Pump and Tank Service, Inc. for the construction of the building and equipment to be erected on the site [for the price of $31,412.00]. * * *

* * * * * * * *
16. Sometime during the month of March, 1958, South Jersey Pump & Tank Service, Inc. deposited on the premises gas storage tanks as its first step in the execution of the contract.
17. In March, 1958, and prior to the expiration date of the last renewal [April 2, 1958] plaintiff again applied to the defendant Building Inspector [then Garzio] for a reissuance or renewal of the building permit. The defendant, Garzio, issued plaintiff a new building permit on March 27, 1958.
18. The defendant Garzio knew of the prior permits and was informed that the plaintiff in reliance thereon had let the contract to South Jersey Pump and Tank Service, Inc.
19. Shortly thereafter, the Township Committee of Ewing Township, or one or more of the members thereof, having received a petition from residents of the Township protesting the issuance of the permit to plaintiff, instructed the Building Inspector to revoke plaintiff's building permit.
20. On March 31, 1958, defendant Garzio, by personal visit, informed plaintiff's agents that the permit had been revoked at the direction of the Township Committee. Plaintiff's agents refused to acknowledge or accept the revocation and on the same day, Garzio mailed his official notification of the revocation to the plaintiff which notice was received on April 2, 1958.
21. The Ewing Township Committee met in a regular meeting on April 3rd and at the meeting, * * * plaintiff protested the action of the Building Inspector and asked for relief from the Township Committee. The minutes of the Township Committee show [that] `Mayor Panaro informed [plaintiff] that the Township was in the process of adopting an ordinance allowing the building of service stations only after appeal and recommendation by the Zoning Board of Adjustment. * * *.'
22. Plaintiff, desiring to cooperate with the municipal officials, accepted the Mayor's statement that the proposed ordinance would *324 be changed only in the respect of requiring an appeal and waited for the passage of the new ordinance."
On June 5, 1958 the zoning ordinance of the township was amended, but instead of providing for service stations upon recommendation of the zoning board of adjustment, as Mayor Panaro said it would, the amendment forbade them altogether. Plaintiff thereupon filed its complaint in this action, on June 16, 1958. Defendants then discovered that the June 5 amendment was invalid, for reasons which do not concern us here. Therefore, on September 3, 1958, the township passed another and further amendment to its zoning ordinance which changed a large area, including the property in question, from a business zone to a residential zone in which service stations are forbidden.
The final paragraphs of the stipulation are as follows:
"27. There has been no change in the character of the neighborhood since the Zoning Ordinance was originally passed in 1950.
28. The Building Permits issued on June 25, 1957 and March 27, 1958 were properly issued at the time of issuance."
Upon these facts the trial court held:
"The court is of the opinion that the building permits and the renewals thereof were valid; that the plaintiff herein relied thereon * * * the plaintiff * * * paid for the property involved a price * * * in excess of its true value, by virtue of the fact that the permit contemplated erection of a gasoline station and was attached thereto.
* * * this fact, coupled with the * * * expenditure of architectural fees, engineering fees, and a contract entered into between the plaintiff and a sub-contractor, cumulatively indicates to the Court that a vested right had been acquired by this plaintiff."
The township argues that Crecca v. Nucera, 52 N.J. Super. 279 (App. Div. 1958), and Roselle v. Mayor and Council of Borough of Moonachie, 48 N.J. Super. 17 (App. Div. 1957), and 49 N.J. Super. 35 (App. Div. 1958), plainly show that the trial court erred. The township says (and plaintiff does not deny) that it is established law in *325 New Jersey that a permit for a use valid when issued may be revoked by a subsequent ordinance prohibiting such use, adopted prior to substantial investment or expenditure by the owner in reliance upon the permit. The point upon which the parties disagree sharply is whether, under our law, the purchase of realty, the expenditure of surveyors' and architects' fees, and the entry into a construction contract, in reliance upon a permit give the permittee an irrevocable right to his permit.
The township says they no not, quoting from the Crecca case, supra (52 N.J. Super., at page 286), in which it was said "The substantial reliance contemplated by our decisions * * * pertained to investments or expenditures in connection with the actual commencement of excavation or construction. * * *" The Crecca opinion cited numerous authorities for the proposition that "The mere fact that property has been purchased or leased with the intention to use it for purpose allowable under the existing zoning regulations or that plans have been made and expenses incurred in preliminary preparations for such use have been held not to prevent the application to it of a subsequent amendment prohibiting its use for such purpose." The court concluded:
"We hold that reliance is not constituted by the change of position brought about by merely entering into a contract to purchase with the intention to make the use later prohibited. Nor do we regard the incurrence of the miscellaneous expenses for title policy, surveyors' and architects' plans as constituting substantial reliance, under all the circumstances of the case."
Plaintiff replies that neither Crecca nor any other New Jersey case is in point because the case at bar is the first in which (1) the permit had been issued before the plaintiff purchased the land; (2) the plaintiff bought the land only because of the existence of the permit; and (3) paid more for the property than it was worth without the permit.
For the sake of disposing of this argument we will assume that plaintiff is correct in saying that this is the first case *326 in New Jersey in which one bought property, and for more than it was intrinsically worth, only because of the existence of a valid permit. We will also assume (without so deciding) that all of the permits and the renewals here involved were valid, and that plaintiff's position is the same as if there had been a single valid permit extant from the day the first was issued to plaintiff's predecessor in title to the day plaintiff completed the purchase. We hold nevertheless that the purchase, the contract and the expenditures did not make the permit irrevocable.
As was said in Crecca, the purchase of property in reliance upon the provisions of a zoning ordinance, for the purpose of using the property in a manner permitted by the ordinance, does not prevent a municipality from thereafter amending the ordinance to forbid the intended use. The fact that the buyer would not have bought it had he known he would not be permitted to so use it, or that he paid more for it because he relied upon the continued existence of the zoning ordinance and of the permitted use, makes no difference. Crecca v. Nucera, supra, and the authorities therein cited.
We see no reason why the additional fact that a permit had been issued prior to the purchase, and that the purchase was in reliance thereon, should make any difference. There may be situations in which the issuance of a permit is of some importance (as, for example, in the "intermediate situation" mentioned in Jantausch v. Borough of Verona, 41 N.J. Super. 89, 94 (Law Div. 1956) affirmed 24 N.J. 326 (1957); cf. Esso Standard Oil Co. v. North Bergen Twp., 50 N.J. Super. 90 (App. Div. 1958)), but the case at bar is not one of them. The purpose of requiring a permit is to enable the municipality to make sure that the proposed building conforms to the pertinent ordinances. Provisions for permits are for the benefit and protection of the municipality, not the property owner. The most that a property owner may claim from a permit is that it is an acknowledgment by a public official that when the permit *327 was issued the proposed building conformed to the pertinent ordinances. Although State ex rel. Lawn v. City of Iowa Falls, 247 Iowa 558, 74 N.W.2d 594, 597 (Sup. Ct. 1956), did not involve a formal permit (the city manager had assured the owner he could use septic tanks), what the court said applies to a permit: "[A]ll the city manager did or could do at that time was to inform him of the city's then policy. Such information could not estop the city from thereafter changing its attitude * * * plaintiff had no greater right than any other property owner to claim exemption from the effect of such change." (Emphasis ours.)
If the proposed building conforms to the ordinance the official must issue the permit; if it does not, he may not. Rhyne, Municipal Law § 32-25, p. 892. If the public official who issues the permit be in error, the property owner receives no benefit from its issuance. Jantausch v. Borough of Verona, supra; Saddle River Country Day School v. Borough of Saddle River, 51 N.J. Super. 589 (App. Div. 1958), affirmed 29 N.J. 468 (1959). In other words, except in the "the intermediate situation in which the administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon," (Jantausch, supra), the issuance of a permit adds nothing to the property owner's pre-existing right to the use. It merely records the approval of the details of the actual construction.
We are aware that there is dictum which appears to give a permit special values or virtues. Cf. Sun Oil Co. v. City of Clifton, 16 N.J. Super. 265 (App. Div. 1951). To say, in a case such as the one at bar, that the property owner who spent thousands before a permit was issued is worse off than the one who spent hundreds after the issuance of a permit, appears to us to be purely arbitrary and without basis in reason. Frequently much must be done by a purchaser of property, who intends to build for a permitted use, before he is ready to apply for a building permit. In *328 addition to purchasing the property he may need not only land surveys and architectural and engineering layouts, but economic studies and traffic checks. He may need to arrange financing, procure tenants, or make other business arrangements. He may need to assure himself of materials, machinery or labor, or the extension of gas, electric, water or sewer lines. He may have to procure cost figures, and alternate designs and estimates. He may need to arrange with the municipality for the vacation of streets, or even for the amendment of the zoning ordinance. All of this, and much more, he may need to do before he is ready to prepare the plans which, ordinarily, must accompany the application for a permit. Why should the position of the property owner be any better the moment a permit is issued (at a relatively trifling cost) than it was the moment before? Cf. Passaic Junior Chamber of Commerce v. City of Passaic Housing Authority, 45 N.J. Super. 381, 387 (App. Div. 1957); Town of Wheatland v. Esso Standard Oil Co., 2 Misc.2d 784, 150 N.Y.S.2d 130 (Sup. Ct. 1956); Deer Park Civic Ass'n v. City of Chicago, 347 Ill. App. 346, 106 N.E.2d 823, 826 (Ct. App. 1952); City of Little Falls v. Fisk, 24 N.Y.S.2d 460, 468, 476 (Sup. Ct. 1941) (not officially reported); Rosenberg v. Village of Whitefish Bay, 199 Wis. 214, 225 N.W. 838 (Sup. Ct. 1929); City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923, 928 (Sup. Ct. 1928).
We conclude that whether an owner has made such investments and expenditures in reliance upon the use being permitted that he has an irrevocable right to continue is a question of fact in each case. If a permit has been issued it is merely a fact to be considered with all of the other facts, and it may be especially pertinent on the issue of reliance. But, except in these cases in which the right to the use is doubtful  what Jantausch called the "intermediate situation"  the buyer has no more right to rely on a permit which exists when he buys land than he has to rely upon the continued existence of the underlying ordinance itself. *329 Either may be terminated, under the municipal police power, by a later ordinance. Since, as we have seen, the mere purchase of land in reliance upon a zoning ordinance does not give the buyer a vested right to a permitted use, the fact that here there was an outstanding permit did not add enough to make the right to build the gas station irrevocable.
Plaintiff argues however that its entry into the $31,400 construction contract in reliance upon the permit, added to the fact of the purchase at the high price, does make the permit irrevocable, citing Atlantic Broadcasting Co. v. Wayne Twp., 109 N.J.L. 442 (E. & A. 1932); Freeman v. Hague, 106 N.J.L. 137 (E. & A. 1929), and Lehigh Valley R. Co. v. Jersey City, 7 N.J. Misc. 154 (Sup. Ct.), affirmed o.b. 106 N.J.L. 248 (E. & A. 1929). Plaintiff says that no New Jersey case has held otherwise, and that any suggestion in any case to the contrary is dictum.
The township's answer to this argument is that the September 1958 amendment of the zoning ordinance, which forbade service stations in the area, rendered the contract unenforceable by the builder because (to quote the township's brief) "no action can be maintained by either party to a contract after the work contemplated by the agreement becomes illegal"; and no construction was actually begun, nor was any expense incurred under the contract.
Plaintiff, in its brief, admits that "[t]he law on the subject seems to be that a contractual duty is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the person subject to the duty, where performance is subsequently prohibited by valid municipal regulation."
However, plaintiff says in its brief that "insofar as the defendants are concerned, it is necessary for the plaintiff to show only that in reliance upon defendants' action it has entered into a contract on which it may be liable."
Assuming (without agreeing) that that is all plaintiff need show, plaintiff here has failed to show even that. The construction contract is before the court and we find nothing *330 in it which suggests any probability that it would be enforceable against plaintiff, now that the construction contracted for has been rendered illegal by the amendment of the zoning ordinance. Restatement, Contracts, §§ 458, 608; 9 Am. Jur., Buildings, § 8; Annotations, 138 A.L.R. 500 and 169 A.L.R. 584; Feinbloom v. Camden Fire Insurance Association, 54 N.J. Super. 541 (App. Div. 1959); Brauer v. Hyman, 98 N.J.L. 743 (E. & A. 1923); Massopust v. Lembeck & Betz Eagle Brewing Co., 94 N.J. Eq. 103 (Ch. 1922); Kiges v. City of St. Paul, 240 Minn. 522, 62 N.W.2d 363 (Sup. Ct. 1953); Graham Corporation v. Board of Zoning Appeals of Town of Greenwich, 140 Conn. 1, 97 A.2d 564, 566 (Sup. Ct. Err. 1953); Lutz v. New Albany City Plan Commission, 230 Ind. 74, 101 N.E.2d 187 (Sup. Ct. 1951); City of Tucson v. Arizona Mortuary, supra, 272 P., at page 929; Brett v. Building Commissioner of Brookline, 250 Mass. 73, 145 N.E. 269 (Sup. Jud. Ct. 1924).
The plaintiff has suggested no fact, nor pointed to any provision in the contract, from which it may be argued that there is any probability of liability. Neither is there any proof of the expense incurred, if any, under the contract before the amendment of the ordinance. Plaintiff offered no proof of the amount of loss, if any, incurred by virtue of the delivery of the tanks on the premises.
The Atlantic Broadcasting, Freeman and Lehigh Valley cases, supra, are all distinguishable from the case at bar upon their facts, especially in that in none of them did it appear that the contract had become unenforceable. We therefore conclude that this contract, even though entered into in reliance upon the permit, did not render the permit irrevocable.
The survey and architects' fees paid do not prevent cancellation of a permit. Crecca v. Nucera, supra.
Finally, plaintiff contends that the September 1958 amendment is invalid because arbitrary and unreasonable. Plaintiff offered no testimony on this point other than the *331 stipulated fact that "There has been no change in the character of the neighborhood since the Zoning Ordinance was originally passed in 1950." That is not sufficient to establish that the amendment is invalid. We have examined the zoning and use maps and find that the area changed from business to residence is a large one, containing far more than the premises in question.
For the foregoing reasons the judgment appealed from is reversed. No costs.