69 N.J. Super. 420 (1961)
174 A.2d 497
SALVATORE SAUTTO AND MARGARET SAUTTO, JAMES A. CHRISTIANO AND JANE CHRISTIANO, PLAINTIFFS-APPELLANTS,
v.
EDENBORO APARTMENTS, INC., A CORPORATION, B.W. CONSTRUCTION CORPORATION, A CORPORATION, JOSEPH B. KEARNS, BUILDING INSPECTOR OF THE CITY OF ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND CITY OF ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1961.
Decided October 17, 1961.
*422 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Elmer O. Goodwin argued the cause for appellants.
Mr. Lee A. Holley argued the cause for respondents (Messrs. Vreeland and Brown, attorneys).
Mr. Thomas P. Kelly argued the cause for intervenor-respondent (Mr. John R. Murray, attorney).
*423 The opinion of the court was delivered by CONFORD, S.J.A.D.
On September 18, 1961 this court granted leave to plaintiffs to appeal nunc pro tunc a judgment of the Law Division which only partially disposed of this action in lieu of prerogative writs. R.R. 1:27B(e); 2:2-3. Plaintiffs had at first appealed without leave.
The judgment was entered July 13, 1961, on cross-motions for summary judgment. It dismissed plaintiffs' complaint, which had attacked the validity of a building permit issued by the defendant building inspector May 9, 1960 for the erection of a five-story apartment house in Orange. It also ran in favor of the defendant property owners on the first count of their counterclaim which sought a declaration that the building permit was "valid, binding and conforming to the proper zoning ordinance of the City of Orange." Undisposed of by the court were the second and third counts of the counterclaim, seeking, respectively, an adjudication that a city ordinance of March 7, 1961 was "invalid and of no legal effect" and actual and punitive damages against plaintiffs for malicious abuse of process in the institution of the action.
As the case involved a million-dollar apartment house project in the early stages of continuing construction (there has been no application for a stay, below or here), the court ordered the appeal to be set down for argument October 9, 1961 on an accelerated basis, and the matter has been fully briefed and argued.
Plaintiffs are property owners in Orange, the Sauttos residing on one side of the proposed apartment house site and the Christianos on the other, the premises in each case being adjacent to that of defendants. Plaintiffs assert that the building permit was void when granted because the building plans failed to provide for side yards the full length of each side line of the apartment house plot, as assertedly required by section 4(d) of the 1922 zoning ordinance of the City of Orange. They claim, in the alternative, that if the *424 plans were not in conflict with the 1922 ordinance, the project is nevertheless illegal by virtue of the amendment of the ordinance March 7, 1961, effective March 9, 1961, which unequivocally requires a ten-foot minimum side yard and exempts therefrom only building permits previously issued on plans conforming to the previous zoning regulations where "construction work" has "started at the effective date" of the amendment, in which event work may proceed provided it is completed within one year of said date. The contention is that no construction work was started by defendants before the 1961 ordinance became effective, certain test borings made in September 1960 not constituting "construction work" within the intent of the proviso.
The defendant owners of the project contend (1) that the plaintiffs are barred by the 45-day limitation period under R.R. 4:88-15(a), not having instituted this action until April 28, 1961; (2) that the building plans upon the basis of which the building permit was issued conformed with the requirements of the 1922 ordinance as to side yards; (3) that the permit was saved under the terms of the 1961 zoning amendment saving clause since the test borings constituted the starting of construction work; (4) that in any case the 1961 amendment could not affect defendants' vested rights under the building permit because they had made substantial expenditures in reliance thereon; and (5) that the plaintiffs are in laches.
The trial court filed a letter opinion in this matter. It made no finding as to the conformity of the proposed building to the 1922 ordinance beyond noting that there was compliance "in the opinion of the building inspector" and that "his interpretation attaches an assumption of correctness." The express basis of the decision of the court was (1) plaintiffs' laches, defendants having "spent in excess of $160,000" on the project at the time of the institution of suit and plaintiffs having known of the building permit  Mr. Christiano (who is a city commissioner of Orange) since May 10, 1960, and the Sauttos at least since September 1960; and (2) limitations, *425 pursuant to R.R. 4:88-15(a). The court further stated:
"I have given no consideration to the 1961 Zoning Ordinance of the City of Orange and its applicability to the present building permit because I am of the opinion that the 1922 Zoning Ordinance applies directly to the building permit issued."

I.
We dispose initially of the contention that the 1922 ordinance prohibited this building, which concededly has no side yards for the first 40 feet from the main front wall, but has "courts" extending to the side lines beyond that depth of the building. The position of the plaintiffs is that the 1922 ordinance requires side yards for the entire depth of the building and side lines. The disputed provision, applicable to a Residence "C" District, controlling this property, reads as follows:
"4(d) A side yard is required along the full length of each side lot line, except as hereinafter specified. Each such side yard and each required court shall have a clear unobstructed width at any story level equal to one-third of the height of its side wall and shall otherwise conform to the requirements of Section 2 (d) for Residence `A' Districts and of those in Section 3 (d) for Residence `B' Districts, except that a rear appendage may extend to the rear line and may not be over six stories in height, provided that over 40 feet back from the main front wall of the building there shall be a required court along each side lot line. The depth of a court may exceed four times its required width, provided that for each additional ten feet of depth six inches per story above the ground story shall be added to the width of such court at any story level throughout its depth. Groups of houses or apartments erected on one lot shall be provided with a side yard for each six families maximum houses thereon."
We do not set forth sections 2(d) and 3(d), referred to in the foregoing quoted excerpt, or definitions of the various terms, set out in section 1(e), because the extended space they would take to reproduce is not worth their contribution toward the rationale of our conclusions. Nor will we *426 indulge in the lengthy exegesis of section 4(d) which response to the contesting interpretations of the parties might render appropriate were resolution of the issue of construction absolutely necessary. Suffice it to say that the ordinance is, to say the least, ambiguous. When the attention of the city counsel was first called to the matter by Mr. Christiano, he wrote the predecessor of defendants and the building inspector that there was error in granting the permit without "side yards." At the argument before the trial court he said: "The way that ordinance is written is not clear." In his brief on this appeal, wherein he generally sides with defendants, he states that the section is "ambiguous" and that, "whatever the City Attorney's original thoughts were * * * it is now his opinion and it has been his opinion for some time that" the building inspector's interpretation is "correct * * *."
In our judgment the cited section of the 1922 ordinance does not proscribe defendants' building scheme in relation to side yards with "reasonable clarity." It therefore cannot operate to invalidate the building permit. Bern v. Borough of Fair Lawn, 65 N.J. Super. 435, 444-445 (App. Div. 1961); Maplewood Tp. v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960); Jantausch v. Borough of Verona, 41 N.J. Super. 89, 104 (Law Div. 1956), affirmed 24 N.J. 326 (1957).

II.
But defendants are nevertheless faced with the argued bar of the March 7, 1961 amendment, the side-yard requirements of which are concededly not met by this building, the physical erection of which did not actually begin until some time in May or June 1961.
The first issue requiring resolution in regard to this phase of the case is whether the test borings which took place on the site in or about September 1960 constituted the "start" of "construction work," so as to save the permit *427 under the proviso of the amendment. The trial court took no testimony on the motions for summary judgment, acting solely on the basis of affidavits. The affidavit of the building inspector, upon which defendants rely in this regard, states:
"13. On September 26 and 27, 1960, the Defendants openly conducted testings and borings of the soil at 84 High Street, and from my personal knowledge of such fact of commencement of construction, I entered in my records at the time the notation that construction had commenced as of that date.
14. My experience in the construction industry and as Building Inspector of the City of Orange gives me the firm opinion that such testings and borings are in fact a necessary and integral part of construction and that construction commences, for the purposes of complying with the building permit, on the date such borings are made. Such testings and borings are a necessary part of the construction work for an apartment building."
At the oral argument the parties were in substantial agreement that the borings in question were for the purpose of removal of cores of earth so as to determine the subsoil conditions of the land in relation to its capacity to sustain the planned structure. Completion of the tests left a group of 6-8 inch holes on the land. There being no real issue of fact between the parties in this regard, but only the matter of the meaning and intent of the ordinance in the respect indicated, we proceed to resolve the question.
Plaintiffs argue that the testing was not "construction work" within the intent of the ordinance, but rather a preliminary investigation of the suitability of the site for the type of structure contemplated for construction. Conceivably, they argue, the cores of earth might test unsuitable for such a building, in which event the project might have to be abandoned or a substantially different type of building planned.
But even more persuasive of plaintiffs' position is their citation of the Building Code of the city, section B-612.3, which reads as follows:
*428 "Sec. B-612.3 Test Borings. All applications for permits for the construction of new buildings or other structures * * * shall be accompanied by a statement describing the soil strata supporting the foundation or footings. Such statement shall include records of borings or tests showing the character and load bearing capacity of the soil. In the absence of satisfactory data from immediately adjacent areas or other authentic sources, the owner or applicant shall make borings, test pits, or other soil investigations at such locations and to sufficient depths of the bearing materials to establish its character and thickness as required by the building official."
Being in pari materia with the zoning ordinance, the foregoing provision of the building code may be fairly resorted to in construing the intent of the former legislation in the present inquiry. It indicates that in the contemplation of the municipal legislature test borings ordinarily would precede the issuance of a building permit and would therefore not, in general prospect, constitute "construction work" pursuant to the permit within the intent of the 1961 zoning amendment saving a project for which a building permit had been issued and "construction work started." The clear tenor of the saving proviso is that the specified commencement of the construction work has followed and been undertaken pursuant to the issuance of the building permit.
In Gulf Oil Corp. v. Vogel, 50 N.J. Super. 324 (App. Div. 1958), we dealt with an ordinance which provided that "a [building] permit under which no work is commenced within 6 months after issuance shall expire by limitation * * *." We stated (50 N.J. Super., at p. 327):
"In the construction of such a provision we are more concerned with the underlying purpose of the legislation than with technical definitions of the verbiage employed. See Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956). The obvious purpose of the provision here involved is that the permittee not unduly delay the inception of the construction project. That a particular phase of the project, such as the digging of the foundation excavation, or the laying of the first wall brick, has not eventuated, is not determinative of the inquiry as to whether any `work' has commenced under the permit. The question is whether any substantial overt act has taken place on the premises material to the effectuation *429 of the project and manifesting to the municipal authorities, on inspection of the premises, that the work is going forward. In this case such acts took place with the dismantling of the pipes and the stripping of the fixtures of the old building, as well as the removal of shrubbery from the plot. All of these actions were referable to the impending demolition of the building and the latter step was a necessary preliminary of the over-all gasoline station project."
It would seem the same general purpose is applicable here, with perhaps an overtone of indication that more substantial "work" was intended in view of the purpose of the amendment to upgrade the requirements in respect of side yards and the intent of the saving clause, consequently, to protect the builder only if he had already proceeded in a fairly unequivocal fashion with physical activity on the site referable to actual construction. We are unable to find in the mere making of the soil tests anything fairly to be characterized as the start of construction work, having regard to the indicia of legislative intent just discussed. No other activity prior to March 9, 1961 being argued by defendants to constitute such construction work, they must fail insofar as this phase of their position is concerned. Cf. Olsen v. Borough of Fair Haven, 64 N.J. Super. 90 (App. Div. 1960).

III.
We are thus brought to defendant builders' alternative contention of substantial reliance upon the permit. Their principal refuge is the decision in Tremarco Corporation v. Garzio, 32 N.J. 448 (1960). That opinion approved the summary of the law set forth in our decision in Roselle v. Mayor and Council of Borough of Moonachie, 49 N.J. Super. 35 (App. Div. 1958), reaffirming 48 N.J. Super. 17 (App. Div. 1957) (32 N.J., at pp. 456-457). These decisions, taken together, indicate that where a property owner has been granted a building permit for a use valid when granted, the municipality nevertheless has a right to adopt later zoning or other police power legislation restrictive of *430 the enjoyment of the permit already issued, but not where the permittee in reliance upon the permit has made substantial investment or expenditure, or where the extent of his reliance and the nature of the behavior of the parties show a balance of the equities strongly in favor of the permittee as against the general public represented by the municipal authorities (or, as here, a complaining taxpayer-owner).
Each case presents a question of fact peculiar to its own concatenation of circumstances. No "easy formula" is available for resolution of such issues. "The ultimate objective is fairness both to the public and the individual property owner." Tremarco Corporation v. Garzio, supra (32 N.J., at p. 457). It is obvious, however, that the complex variety of factors which must control such a determination emphasizes the desirability of reaching a judicial conclusion upon them by plenary hearing rather than on the basis of opposing sets of affidavits, which frequently are heavily larded with lawyer-dictated conclusions and hearsay, and characterized by absence or minimization of illuminating detail of potentially harmful import to the cause being aided by the affiant. These considerations mesh with the settled rule that on a motion for summary judgment the judge must avoid resolving contested issues of fact, even if the evidence predominates one way. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). This rule is equally applicable to such a motion in a prerogative writ case. While such cases peculiarly require expedition in determination, this objective can be achieved, consistently with a proper mode of disposition of the important questions thus presented, by setting the case down for hearing immediately upon joinder of issue or after denial of a motion for summary judgment in cases where the matter was not one properly for disposition in that manner.
A thorough canvass of the affidavits on the motions in the Law Division satisfies us that the issue of substantial reliance in this case should have been resolved on testimony rather than affidavits. Time does not permit setting *431 out in this opinion our analysis of all of the contested issues of underlying fact upon the basis of which a judicial equation of the factual inferences and conclusions with the ultimate conclusion of substantial reliance would have to be based. Examples will have to suffice.
The opinion of the trial court finds that "at the time of the filing of this action the defendants had spent in excess of $160,000 on the project." The pertinent issue is not what was spent (or irrevocably committed) by the time suit was instituted but rather by the effective date of the amending ordinance (March 9, 1961), since defendants were bound thereby except as relieved by previous acts of reliance. There are contested issues of fact as to how the $160,000 in question is made up. The affidavits in support of defendants' position are conspicuous for their paucity of or vagueness in respect of dates in this and other regards. They do not differentiate between occurrences before and after March 9, 1961. While the affidavit of Magnor states the defendant acquired title to the premises in August 1960 "at a cost of $72,500," he does not state when the money was spent, and it seems to be conceded now by defendants that the expenditure took place in April 1961. Counsel was not able to inform this court at argument whether the contract of purchase of the property was of such a nature that the vendee could not, on March 9, 1961, have tendered a deed of the property back to the vendor without liability because of invalidation of the building permit by reason of the amendatory ordinance. Examination and cross-examination at a trial could have rendered the pertinent facts clear.
The affidavit of Fred E. Hertan, made May 25, 1961, lists 13 items of "expenditure," including $72,500 for land, "incurred since" April 21, 1961. At the argument we were told by counsel that the word "since" was an inadvertence, and that the intent of the affiant was "up to and on April 21, 1961." Accepting this, however (and passing the thought that the trial judge must be deemed to have taken the affidavit as he read it), does not eliminate the essential but *432 unknown factor as to how much was spent or incurred prior to March 9, 1961, it being apparent that many of the items were incurred on or after April 21, 1961, the date the F.H.A. mortgage loan was closed. Inspection of some of the items on the list raises the thought they may well not have been irrevocably expended or committed if the building project were declared illegal. Only testimony and cross-examination could satisfactorily answer this as well as other material inquiries pertinent to the question of binding and non-cancellable obligations and irrecoverable expenditures made in reliance upon the permit and before notice of its possible invalidation by passage of the March 1961 amendment. It may be significant that the affidavit of Brown, officer of defendant Edenboro Apartments, Inc., says that at the end of April he could still have "avoided substantial damages hereunder in negotiating terms and conditions of subcontracts and other expenses" had plaintiffs then told him they intended to sue.
Defendants argue that their proofs show that once they obtained the permit and applied for F.H.A. mortgage insurance they became enmeshed in an obligatory course of action which by March 1961 forced them to continue on and through the closing on April 21, 1961 and with continuous construction down to date. This may or may not be a justified conclusion from the affidavits and from what the court may properly take judicial notice of, if anything. But it seems to us to be far from undisputed or indisputable and therefore it is another of the material subordinate issues of fact properly to have been resolved at a hearing and weighed for its effect upon the conclusion of substantial reliance.
Insofar as the item of expenditure for land is concerned, the Tremarco case, supra, cannot be taken as a blanket indorsement of the proposition that the purchase price of land acquired by a property owner for the express purpose of erecting an improvement is necessarily part of the "substantial reliance" which will preclude later restriction *433 of the contemplated use by amendatory ordinance after issuance of a permit for such use. In Tremarco it was conceded by the parties that the right to use the property for a service station increased its value above what it would be for other business purposes and "far above" what it would be for residential purposes, to which use the property was confined after the amendatory ordinance. (32 N.J., at p. 451.) Moreover, the factor of land investment was but one of a number of circumstances, including a concededly illegal revocation of a permit, which in totality heavily preponderated, in the view of the Supreme Court, to make it inequitable to deprive the permittee of its right to build the station.
Clearly, cost of land to a property owner should not, ordinarily or invariably, be regarded as a factor of reliance to prevent subsequent zoning upgrading beneficial to the community at large, since every owner has presumably made an expenditure for his property at some time or other. Cases too numerous to require citation hold that a property owner may not be exempted from an upgrading zoning ordinance merely because he may more profitably use the property as previously less restrictively zoned. The Tremarco case may not fairly be read more broadly than to the effect that a recent purchase expressly for a particular use, lawful and proper under a previously issued permit and existing regulations, may be a factor, to be weighed with all others, in judging the purchaser's reliance and the overall equity of his position, vis-a-vis the public, as against a subsequently adopted regulation relegating the property to more restrictive uses materially reducing its value.
Defendant's brief asserts that the $72,500 purchase price is "far in excess of the value of the land without the building permit." There is no proof on the point in the affidavits other than a statement by a lawyer that "the land will have very little value" "without the project as now constituted." The assertion is not otherwise supported. However, this is not the presently pertinent inquiry. That is whether, and *434 by how much the price paid exceeded the value of the land with the burden of the requirement of the side yards called for by the March 1961 amendment. There is no proof as to how much, if at all, compliance with that requirement would reduce the value of the property or its utility for an apartment house project. Any such proof which may be forthcoming at the hearing on the remand should be weighed against the public policy of requiring side yards for apartment houses and the influence of the latter consideration on the issue of the city's good faith in amending the ordinance.
As to the other asserted items of expense constituting "reliance," in determining their substantiality the court will, of course, compare the amounts involved with the magnitude of the project as a whole. An expense "substantial" in relation to a small dwelling may not be substantial in relation to a very large enterprise. Moreover, as pointed out in the Appellate Division opinion in Tremarco in a respect not disputed by the reversing opinion, 55 N.J. Super. 320, 327-328 (App. Div. 1959), a property owner interested in a large construction project must ordinarily take his chances on numerous types of incidental preliminary expenses generally incurred even before a permit is issued. Clearly, as to these, the situation of the owner may be damnum absque injuria in relation to a bona fide subsequently adopted restrictive regulation. Any other rule would severely burden municipal authorities properly concerned with legitimate zoning protection for the public at large as against the operations of land developers who naturally may be more concerned with immediate profits than with the general public welfare subserved by salutary zoning.
In summary, this case falls within the principle that a summary judgment should not be granted if that step involves deciding material issues of fact without a plenary hearing. Here there were seriously disputed material issues of fact on the question of the substantiality of the alleged reliance of defendant on the permit prior to adoption of the *435 controlling March 1961 ordinance. They should be resolved at a hearing. Distinguish the situation in Tremarco, supra, where the parties stipulated the facts on the motions for summary judgment (32 N.J., at p. 451).
The foregoing conclusions obviate the necessity for considering the correctness of the trial court's determinations of the issues of limitations and laches. Even if those factors would have barred plaintiffs from attacking the validity of the permit under the 1922 ordinance, they do not necessarily bar them insofar as the attack is based upon the 1961 ordinance. Plaintiffs were entitled to assume that defendants would not begin to erect the building if it did not comply with the 1961 ordinance. From plaintiffs' own standpoint, they were not unreasonable in assuming defendants were not in compliance therewith. Their right of action insofar as the 1961 ordinance is concerned, therefore, did not accrue until later acts of defendants indicated they intended to go ahead with the construction of the building regardless of the amendment. Limitations is therefore not applicable. Laches, depending on the proofs, may still be an issue if supported by occurrences after March 9, 1961.
The hearing on the remand should obviously be proceeded with forthwith, in view of the continuing construction of this building. It may be noted that notwithstanding no stay has ever been sought defendants have been under continuous notice since the institution of this suit, if not before, that their enterprise may be in violation of the zoning ordinance as it now stands. See Garrou v. Teancck Tryon Co., 11 N.J. 294, 307 (1953).
Reversed and remanded for trial conformably with this opinion. Costs to abide the event.