91 N.J. Super. 585 (1966)
222 A.2d 28
ANTHONY L. CAMPARO AND JOSEPHINE CAMPARO, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF WOODBRIDGE, ETC., AND THEODORE MEHALOFF, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1965.
Decided July 7, 1966.
*586 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Warren Brody argued the cause for appellants (Messrs. Winetsky & Brody, attorneys).
Mr. Paul E. Anderson argued the cause for defendant Theodore Mehaloff (Mr. Guido J. Brigiani, attorney).
Mr. Norman Robbins argued the cause for defendant township.
*587 The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiffs appeal from a partial summary judgment holding that a building permit is valid.
The undisputed facts are: Defendant Mehaloff is the owner of property with a frontage of approximately 65 feet on Route 1 in Woodbridge, which is rented to Spotless Venetian Blind Service & Mfg. Co. (Spotless), of which he is a principal. The business of Spotless is, and for 16 or 17 years prior to the inception of this suit has been, the sale at retail of venetian blinds and window shades which are cut and assembled on the premises.
The property is zoned by Woodbridge for B-3 Highway Business Zone use. Prior to February 18, 1964, art. XVI, § 1(a), of the zoning ordinance, relating to the B-3 zone, permitted "All uses permitted in the B-2 Central Business Zone, subject to all requirements of that zone."
Among other uses permitted in the B-2 zone, art. XV, § 1(c), provided for:
"Baking, laundry, printing, upholstering and similar establishments, and businesses of a similar or no more objectionable character, subject to the following provisions:
(1) All goods or products manufactured or processed shall be sold at retail on the premises.
(2) All such manufacturing or processing shall be done on the premises, and not more than eight (8) persons shall be employed in said activity at any one time."
On December 14, 1962 Mehaloff, having initially failed to obtain a building permit, applied to the Board of Adjustment of Woodbridge for a variance which would allow both an expansion of the existing building and its use for the manufacture and storage of canvas awnings and canvas products. The board recommended a variance; it was granted by the township committee on January 15, 1963.
On February 18, 1963 plaintiffs, taxpayers of Woodbridge and owners of property adjacent to Mehaloff's commenced this action in lieu of prerogative writs alleging that the reasons in support of the variance were legally inadequate. *588 Mehaloff filed an answer and cross-claimed on the ground that the proposed use was permitted in the B-2 zone, which, unlike the B-3 zone, had no side yard or parking restrictions requiring a variance.
On January 24, 1964, apparently as a result of administrative reconsideration, Mehaloff received a building permit to proceed with the proposed expansion. But he did not proceed then or subsequently. Relying on the permit, he moved for summary judgment on the ground that its issuance had rendered the case moot. Plaintiffs opposed the motion, arguing that the evidence before the board of adjustment indicated that sales were solicited and consummated by telephone, hence the operations (which defendant contended were similar to the proposed expanded use) did not comply with the requirement of sales "at retail on the premises."
On February 18, 1964, before the motion was decided and unbeknownst to the individual parties, art XVI, § 1(a), set forth above, was amended to permit in the B-3 zone: "All uses permitted in the B-2 Central Business Zone, subject to all requirements of the B-3 zone." Thus, effective as of that time, the side yard and parking restrictions of the B-3 zone were imposed on Mehaloff's property and his building permit was invalidated, irrespective of its possible validity under art. XV, § 1(c). On April 6, 1964 an order was entered denying Mehaloff's motion for summary judgment.
On April 22, 1964 the township amended the zoning ordinance so as to exempt from the effect of the February 18, 1964 amendment permits which had been issued prior to March 11, 1964, thus removing the side yard and parking restrictions from Mehaloff's property and giving him the right to proceed, provided his proposed use satisfied art. XV, § 1(c).
Plaintiffs then moved for partial summary judgment that the permit was invalid. Significantly, they did not challenge the validity of the April 22 amendment, even after the trial court gave them additional opportunity to do so. Furthermore, they refrained from seeking a determination of the *589 validity of the variance. The trial court denied their motion, ruling that (1) the April 22 amendment was valid, and (2) the proposed use was permitted in the B-2 zone and by incorporation in the B-3 zone. The result was to establish the validity of the permit.
The first question presented is whether an amendment to a zoning ordinance may exclude from its operation one who has previously received a building permit for a structure or use interdicted by the amending ordinance.
Although no decision has been cited or found in this State on this precise point, it is well settled that a municipality may amend its ordinances in such manner as to effectively restrict a prior issued building permit, unless the holder of such permit, in reliance thereon, has made a substantial investment or expenditure, or unless the extent of his reliance and the nature of the parties' behavior show a balance of equities strongly in favor of the permittee as against the general public. Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461, 470 (App. Div., 1964), certification denied 43 N.J. 353 (1964). Sautto reached this conclusion on the basis of Roselle v. Mayor and Council of Borough of Moonachie, 49 N.J. Super. 35 (App. Div. 1958). In Sautto, the court quoting Tremarco Corporation v. Garzio, 32 N.J. 448, 457 (1960), stated that the ultimate objective is to achieve fairness both to the public and to the individual property owner. In fact, the recognition of reliance and substantial expenditure is itself an example of staying the hand of the municipality from employing an amendatory ordinance in a manner hurtful to one acting in good faith.
Considering the rationale of the above cases we are satisfied that where, in proper circumstances, a municipality chooses to grant what amounts to retroactive amnesty from the restrictive effects of a zoning change, its objective should not be thwarted, unless, of course, the objective is founded in bad faith, or the general public (or a taxpayer) suffers substantial injury. In the case before us there is no evidence of these factors, and the presumption is otherwise. See Vickers *590 v. Tp. Committee of Gloucester Tp., 37 N.J. 232, 242 (1962), certiorari denied 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d, at p. 495 (1963). The burden was on plaintiffs to show that the amendment was arbitrary, Ibid., and, as noted, they have never challenged it. Therefore, we uphold the April 22 amendment's exemption of prior duly issued building permits.
The second question is whether the building permit was valid when issued. Specifically, the problem is whether the proposed awning business would be one which constituted selling "at retail on the premises," as permitted in art. XV, § 1(c), supra. The parties agree that the purpose of this limitation is to insure that manufacturing is merely an adjunct to the dominant retail use of the premises. But plaintiffs argue that the existing use is not permitted and should not be allowed to expand because the phrase "sold at retail on the premises" means over-the-counter sales, and it is undenied that almost all sales by Spotless are transacted over the telephone. However, defendants urge that "on the premises" merely connotes "retail," as distinguished from "wholesale," sales.
In rejecting plaintiffs' construction the trial court reasoned by analogy that the intent of the phrase was clearly not to require a hypothetical customer to come to a place of business and carry away his baked goods or laundry, or to bring either his printing or upholstery work to a shop and pick it up when the work is completed. Rather, the intent was to restrict the scope and size of the operations to one site so as to eliminate either the likelihood of additional retail outlets or any operations between work done on the premises, and sales to the ultimate consumer. So restricted, the operations would necessarily be lesser than if sales were allowed at a second location or at wholesale.
Moreover, the trial court found that its construction was reinforced by the fact that the zone here involved was on Route 1, a heavily traveled and hazardous highway, and since *591 the operations were restricted, the dangers of parking on Route 1 would be proportionately decreased.
We agree with the trial court's conclusion that the method of sales used and proposed to be used, although not over-the-counter, were nevertheless sales "at retail on the premises," and therefore we conclude that the building permit was valid when issued. Since it follows that no variance was necessary we need not decide whether or not the "variance" herein was properly granted.
Affirmed.