TREMARCO CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-APPELLANT v. JOHN A. GARZIO, BUILDING INSPECTOR OF THE TOWNSHIP OF EWING IN THE COUNTY OF MERCER AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EWING IN THE COUNTY OF MERCER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued February 22, 1960—Decided May 23, 1960.

*Mr. George H. Bohlinger, Jr.*, argued the cause for plaintiff-appellant (*Messrs. Minton, Dinsmore & Bohlinger*, attorneys).

*Mr. Benjamin Forer* argued the cause for defendants-respondents (*Mr. Sanford Soren*, of counsel).

The opinion of the court was delivered by

SCHETTINO, J. This appeal is from a unanimous reversal by the Appellate Division of a judgment of the Superior Court, Law Division ordering defendants to reissue a building permit to plaintiff for the erection of a public garage and a gasoline station.

On June 17, 1959 plaintiff filed a notice of appeal and simultaneously a notice of petition for certification. Defendants thereafter moved to dismiss the appeal alleging that

plaintiff had no right to appeal under *R. R.* 1:2–1. We find it unnecessary to decide the motion as we shall determine the cause as one coming before us on petition for certification which we have granted. *R. R.* 1:10–2.

In the trial court the parties stipulated the facts and agreed to submit the cause on cross motions for summary judgment. The facts are as follows: On June 25, 1957, all of the provisions of the applicable zoning ordinance having been complied with, the Ewing Township building inspector issued to the then owners of the premises in question a valid building permit for the construction of a public garage and gasoline filling station. At that time and up to September 3, 1958 the property was in an area that had been zoned a business district since the enactment of the zoning ordinance of 1950. Until June 5, 1958, public garages and gasoline filling stations were permitted in such business districts subject only to limitations as to proximity to certain buildings and places such as churches, schools and parks and as to the location of the buildings and gasoline pumps on the lot.

Concededly, the right to use the property for a service station increased the value of the property above what it would have been worth as a location for other business purposes and increased its value far above what it would have been worth for residential purposes. Except for the availability of the premises in question for the proposed service station plaintiff, whose sole function is to acquire sites for gasoline service stations for Gulf Oil Corporation, would have had no interest in it. Relying upon the existence of the permit and the provisions of the ordinance under which it had been granted, the plaintiff agreed to purchase the premises for $21,500. Prior to the passing of title the attention of all parties was directed to the fact that Section 7 of the building code provided that any permit issued thereunder would automatically be revoked if the proposed work was not actually begun within three months next after the date on which such permit had been issued. At the expira-

tion date of this permit an assurance was secured from the building inspector that the permit could be renewed. Relying upon such assurance, plaintiff acquired title on October 2, 1957. In accordance with the inspector's commitment, the permit was renewed on October 8, 1957 for an additional 90 days. Prior to the expiration of this 90-day period, plaintiff again applied for and received a reissuance or renewal of the building permit for an additional 90 days. The renewals were granted in the name of Gulf Oil Corporation, plaintiff's principal.

During the period of the renewals of the permit, plaintiff spent $145 for a survey, $647.16 for architect's fees, and entered into a contract in the amount of $31,412 with a contractor for the construction of the building and for the installation of the necessary equipment. During March of 1958 the contractor deposited storage tanks on the premises as the first step in the execution of the contract.

In the month of February 1958 defendant Garzio was appointed to the position of building inspector succeeding the inspector with whom plaintiff had dealt. In March of 1958 plaintiff applied to Garzio for a reissuance or renewal of the building permit, and such a permit was issued on March 27, 1958. Defendants concede the validity of this permit. Garzio knew of the prior permits and had been informed that plaintiff in reliance thereon had entered into the contract for the construction and installation work.

Shortly thereafter, defendant township committee received a petition from certain township residents protesting the issuance of the permit to plaintiff and although there had been no change in the character of the neighborhood since the enactment of the 1950 zoning ordinance, the township committee instructed Garzio to revoke plaintiff's building permit. On March 31, 1958 Garzio, by a personal visit, informed plaintiff's agents that the permit had been revoked and when they refused to acknowledge or accept the revocation, Garzio mailed "official" notification thereof to plaintiff, which was received on April 2, 1958. (At oral argument,

defendants admitted that the "revocation" was without legal warrant.)

At a regular township committee meeting on April 3 plaintiff protested the action of the building inspector and asked for the reinstatement of the permit. The minutes of the meeting show that the mayor stated that the committee was in the process of considering the adoption of an ordinance which would require applications to construct service stations to be "appealed" to the board of adjustment before a building permit could be issued. Plaintiff, desiring to cooperate with the municipal officials, accepted the mayor's statement that the only change which the proposed ordinance would work would be the requirement of such an appeal and therefore awaited the passage of the new ordinance. No such ordinance having been introduced prior to April 30, 1958, plaintiff on that date again protested the revocation of the permit. On May 8, 1958 the township solicitor notified plaintiff of the refusal of the township committee to act upon its request for relief.

On May 1, 1958 the committee had introduced and approved on first reading a proposed amendment to the zoning ordinance. The advertisement concerning this amendment stated that it would be further considered on May 15, 1958. At that meeting the planning board made an oral report that it had met on May 8, had disapproved the proposed amendment to the ordinance and had suggested a different ordinance. The committee thereupon rejected the May 1, 1958 amendment and introduced on first reading another amendment which was advertised for further consideration at a meeting to be held on June 5. On that date the committee adopted said ordinance on final hearing. Under its terms the board of adjustment has no power to grant plaintiff a permit for the construction of a gasoline station on plaintiff's lands. On September 3, 1958 the committee passed another amendment to its zoning ordinance changing the area in question from a business zone to a residential zone.

Plaintiff contends that a validly issued building permit cannot be revoked nor can its lands be rezoned adversely to its interests under the permit if there has been "substantial" reliance upon the continued validity of the permit; that there was such reliance and that it is demonstrated by substantial expenditures which were made, by its change of position, by the purchase of the property at a higher price than it would be worth were it to be used for other business or residential purposes and by incurring additional obligations, citing *Jantausch v. Borough of Verona,* 41 *N. J. Super.* 89, 93 (*Law Div.* 1956), affirmed 24 *N. J.* 326 (1957) and 8 *McQuillin, Municipal Corporations,* §§ 25.157–158, *pp.* 360–366 (3*d ed.* 1957), to support its position. Plaintiff also urges that the beginning of actual construction is not a necessary element in evaluating whether there has been substantial reliance and that the statement in *Crecca v. Nucera,* 52 *N. J. Super.* 279 (*App. Div.* 1958), to the effect that substantial reliance pertains to investments or expenditures in connection with the actual commencement of excavation or construction was *dictum* and unnecessary to the result of that case. Plaintiff also contends that even if its reliance had been minimal, defendant municipality abused its police powers in revoking the permit. Generally, it charges defendants with arbitrary, capricious and unreasonable conduct.

Defendants argue that except in those cases where there has been substantial reliance upon a building permit prior to its revocation, the law existing at the time of decision governs the validity of the intended use of the property rather than the law which existed at the time the building permit was issued. *Roselle v. Mayor and Council of Borough of Moonachie,* 49 *N. J. Super.* 35 (*App. Div.* 1958), reaffirming 48 *N. J. Super.* 17 (*App. Div.* 1957). Defendants insist that here there·has been no substantial reliance because that term requires something akin to actual commencement of construction, and that the *dictum* in *Crecca,* indicating that actual commencement of excavation or construction is re-

quired, was not a departure from the New Jersey holdings, and moreover was completely in line with the weight of authority elsewhere. Annotation, 138 *A. L. R.* 500 (1942); 1 *Rathkopf, Zoning and Planning, ch.* 57, § 2, *p.* 920 (*3d ed.* 1959); *Rhyne, Municipal Law,* § 32–25, *p.* 892 (1957); and 8 *McQuillin, op. cit., supra,* § 25.157, *pp.* 360–361. Lastly, defendants contend that even if there had been substantial reliance upon the building permit by the plaintiff, the permit nevertheless expired by operation of law as plaintiff began no excavation or construction under the original permit or the renewals within the 90-day periods provided for by the ordinance. *Kurowski v. Board of Adjustment of City of Bayonne,* 11 *N. J. Super.* 433 (*App. Div.* 1951).

This synopsis of the arguments of the parties demonstrates that the main contention centers upon the question of what actions constitute such reliance as would bar revocation of the validly issued building permit. We note at the outset that this case involves an ordinance proposed and enacted after the regular issuance of a building permit. Therefore, we have no occasion to and do not consider what rule of law should be applied to those cases where there is no semblance of compliance by the landowner with the applicable ordinance or authorization for the issuance of such a permit. See *Jantausch, supra,* 41 *N. J. Super.,* at *page* 94; *Home Fuel Oil Co. v. Borough of Glen Rock,* 118 *N. J. L.* 340 (*Sup. Ct.* 1937); *Dickinson v. Inhabitants of City of Plainfield,* 13 *N. J. Misc.* 260 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 336 (*E. & A.* 1936). Nor do we consider or express any opinion as to the proper outcome of what has been characterized as the "race of diligence" (*Downham v. City Council of Alexandria,* 58 *F.* 2d 784, 788 (*D. C. E. D. Va.* 1932)) which often occurs when landowners hasten to acquire permits before a pending ordinance, which would have the effect of prohibiting the intended use, can be enacted. See *Socony-Vacuum Oil Co. v. Mt. Holly Township,* 135 *N. J. L.* 112 (*Sup. Ct.* 1947) and *Gold v. Building Com-*

*mittee of Warren Borough,* 334 *Pa.* 10, 5 *A. 2d* 367 (*Sup. Ct.* 1939) in which permits were refused for this reason. In *Appeal of A. N. "Ab" Young Co.,* 360 *Pa.* 429, 61 *A. 2d* 839 (*Sup. Ct.* 1948) a permit had been issued and then revoked and a request for a new permit had been refused because the proposed use conflicted with a pending ordinance, and in *Sharrow v. City of Dania,* 83 *So. 2d* 274 (*Fla. Sup. Ct.* 1955) a permit was revoked because of such a conflict. See also *Note,* 34 *Notre Dame Lawyer,* 109, 111–113 (1958). Nor, as we view the record, is this a case where a flaw in the zoning scheme was revealed for the first time by plaintiff's application. See *Guaclides v. Borough of Englewood Cliffs,* 11 *N. J. Super.* 405, 415 (*App. Div.* 1951).

In general terms the rule is that where the permit is regularly issued in accordance with the zoning ordinance, it may not be revoked after reliance. It must be determined at what point it can be said that an individual has performed acts which form the wellspring from which certain protectable interests may flow and create a countervailing force which will prevail over the normally paramount authority of the municipality to preserve the desirable characteristics of the community through zoning. See *Lionshead Lake, Inc. v. Township of Wayne,* 10 *N. J.* 165 (1952), appeal dismissed 344 *U. S.* 919, 73 *S. Ct.* 386, 97 *L. Ed.* 708 (1953); *Fischer v. Township of Bedminster,* 11 *N. J.* 194 (1952); *Pierro v. Baxendale,* 20 *N. J.* 17 (1955). As was pointed out by Judge Conford in *Roselle, supra,* 49 *N. J. Super.,* at *page* 40, the basic problem is "as to the stage of utilization of an individual's property which should be regarded as immunizing it from the ban of a subsequently adopted prohibitory zoning regulation." While that case dealt with an application for a license to operate a trailer park, the following language is especially pertinent here:

"* * * In some jurisdictions this point is reached when an application for a permit or license is filed, and subsequent prohibitory legislation is not permitted to affect the applicant's rights, *State ex rel. Fairmount Center Co. v. Arnold,* 138 *Ohio St.* 259, 34 *N. E.*

2d 777, 136 *A. L. R.* 840 (*Sup. Ct.* 1941); *Shapiro v. Zoning Board of Adjustment,* 377 *Pa.* 621, 105 *A.* 2d 299 (*Sup. Ct.* 1954). The more general view, however, is that the mere right under existing laws and ordinances to make a particular use of property at the time of an application for a permit does not immunize the owner from valid subsequently adopted legislation, state or municipal. 8 *McQuillin, Municipal Corporations* (*3rd ed.* 1957), § 25.155, *p.* 356; *Annotation* 169 *A. L. R.* 584 (1947).

\* \* \* \* \* \* \* \*

\* \* \* The predominant viewpoint goes to the extent of sanctioning the revocation of a permit for a use valid when issued, where a subsequent prohibitory regulation is adopted prior to reliance by the owner upon the permit by substantial investment or expenditure. *McQuillin, op. cit., supra,* §§ 25.157, 25.158, pp. 360–366; *cf. Freeman v. Hague,* 106 *N. J. L.* 137 (*E. & A.* 1929); *Atlantic Broadcasting Co. v. Wayne Township,* 109 *N. J. L.* 442 (*E. & A.* 1932)."

 There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and *quantum* of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality through planning and the implementation of that scheme through zoning "to 'make, ordain and establish all manner of wholesome and of reasonable laws, not repugnant to the Constitution,' as may be deemed to be 'for the good and welfare of the commonwealth, and all the subjects of the same.' " *Roselle v. Wright,* 21 *N. J.* 400, 408–409 (1956). This right is one of which the permittee is deemed to be aware. *Cf. Fischer, supra,* and *Lionshead Lake, Inc., supra.*

 The pertinent factors are these. The municipality in fact knew that plaintiff wanted the property solely for a gasoline service station and intended and did pay a sum substantially in excess of the value of the property for other purposes. Prior to the attempted revocation of the permit, plaintiff entered into the construction and installation contract and thus faces the prospect of a suit for breach of this contract. Before revocation the contractor delivered gasoline storage tanks onto the premises for installation. It

expended moneys for title and architectural work. The permit was illegally revoked. There was no superseding ordinance nor in fact a pending one at the time of the attempted revocation. Additionally as to the amendment, plaintiff was lulled into inaction on its construction work by defendants' promise that the zoning change contemplated would not affect plaintiff.

There was no change whatsoever in the characteristics of the area since the adoption of the 1950 zoning plan. The surrounding lands are still substantially undeveloped. There is no suggestion that the governing body suddenly found itself confronted with an ordinance which had become outmoded because of ensuing events. The amendment was provoked by a petition from some of the residents who sought to eliminate gasoline stations out of the zone.

In these circumstances, we are satisfied that the equities strongly predominate in favor of plaintiff. Its right to proceed under the regularly issued permit should therefore be upheld.

■ Defendants also contend that plaintiff did not comply with the requirement that the work be started within 90 days after the issuance of the permit. It is conceded that on March 27, 1958 defendant Garzio issued a valid permit to plaintiff. The 90-day period thereunder would have expired on June 27, 1958. It cannot be argued that when defendants attempted to revoke plaintiff's permit on April 2, 1958, plaintiff should have insisted on the validity of its permit and have gone ahead with construction. We can readily assume that the municipal police authorities would be called in and action taken. Plaintiff, instead of following a course of conduct which might lead to a breach of peace, filed its complaint in this cause on June 16, 1958, well within the 90-day period. We find no merit in this point.

The judgment of the Appellate Division is reversed and that of the Law Division reinstated.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.