205 N.J. Super. 273 (1984)
500 A.2d 757
TIMBER PROPERTIES, INC., LANDMARK FARMS, INC., JOHN R. HARDIN, JR. AND STEPHANIE P. HARDIN, PLAINTIFFS,
v.
TOWNSHIP OF CHESTER, THE MAYOR AND COUNCIL OF THE TOWNSHIP OF CHESTER, THE PLANNING BOARD OF THE TOWNSHIP OF CHESTER, MAYOR FRANK ADESSA, FRANK J. GOMEZ, EDWARD R. RUSSO, YALE H. FERGUSON AND JAMES D. SMITH, ROBERT COLE, EARL BRIDGETT, PEYTON ROCHELLE, FRANK GOMEZ, FRANK D'ALONZO, LEONARD TAYLOR AND KENNETH CARO, DEFENDANTS.
Superior Court of New Jersey Law Division Morris County/Middlesex County.
Decided March 2, 1984.
*275 Herbert A. Vogel and Thomas F. Collins, Jr., for plaintiffs (Vogel & Chait, attorneys).
Alfred L. Ferguson for defendant Township of Chester and individual defendants Adessa, et al. (McCarter & English, attorneys; Gary T. Hall on the brief).
James R. Hillas, Jr., for defendant Township of Chester Planning Board.
SKILLMAN, J.S.C.
This is a Mount Laurel case. See Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983) *276 ("Mount Laurel II"). It follows the usual pattern. The principal plaintiff is Timber Properties, Inc. (referred to hereafter as "Timber"), a builder which proposes to construct a development that will include some housing for low and moderate income persons. Defendants are the municipality in which the proposed development would be constructed, Chester Township, as well as its governing body, its planning board and the members of those municipal agencies. The complaint contends that the municipal zoning ordinance is unconstitutional because it fails to provide a realistic opportunity for the construction of low and moderate income housing.
In addition to the usual factual allegations on which Mount Laurel claims are based, the complaint alleges that Timber filed applications for conceptual review and for preliminary site plan approval with the Planning Board and that its plans complied with the existing zoning ordinance. The complaint further alleges that for nearly a year and a half the Planning Board as well as other municipal officials strongly encouraged the proposed development. However, the proposed project was aborted, shortly after the decision in Mount Laurel II, when the governing body adopted amendments to the Chester zoning ordinance which compelled the denial of Timber's site plan application. This amendment to the zoning ordinance and the circumstances of its adoption provide the basis for a variety of non-Mount Laurel claims, which are set forth in separate counts of the complaint. Plaintiffs contend that defendants' actions deprived Timber of "vested rights" in their proposed development, violated Timber's federal civil rights for which a claim lies under the Federal Civil Rights Act, 42 U.S.C. § 1983, interfered with contractual relationships for which a claim may be pursued under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., and violated the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq.
*277 Defendants filed a motion which sought in part dismissal and/or summary judgment on these non-Mount Laurel counts.[1] It is concluded for the reasons set forth in this opinion that these parts of the motion should be granted in their entirety.

I  Vested Rights

A municipality possesses continuing authority to amend its zoning ordinance and ordinarily a zoning change applies to property for which there is a pending application for approval of a particular use. Donadio v. Cunningham, 58 N.J. 309, 322-323 (1971); Morris v. Postma, 41 N.J. 354, 362 (1964); Tremarco Corp. v. Garzio, 32 N.J. 448 (1960). The reason for this rule is that any zoning amendment presumably serves "to preserve the desirable characteristics of the community through zoning", Tremarco v. Garzio, supra at 456, and the exemption of a property owner from a zoning amendment simply because an application had been filed under a prior ordinance would undermine the objectives sought to be achieved by the new ordinance. Kruvant v. Cedar Grove, 82 N.J. 435 (1980); Donadio v. Cunningham, supra. As the court observed in Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420 (App.Div. 1961):
[A] property owner interested in a large construction project must ordinarily take his chances on numerous types of incidential preliminary expenses generally incurred even before a permit is issued. Clearly, as to these, the situation of the owner may be damnum absque injuria in relation to a bona fide subsequently adopted restrictive regulation. Any other rule would severely burden municipal authorities properly concerned with legitimate zoning protection for the public at large as against the operations of land developers who naturally may be more concerned with immediate profits than with the general public welfare subserved by salutary zoning. [Id. at 434.]
However, there are circumstances under which a landowner may acquire "vested rights" under an existing zoning ordinance and hence be exempt from the effect of a zoning change. One source of "vested rights" is a section of the Municipal Land Use Law which provides that the general terms and conditions on *278 which a preliminary subdivision or site plan approval has been granted shall not be changed except by an ordinance addressed to public safety or health concerns. N.J.S.A. 40:55D-49(a); see Field v. Franklin Tp. 190 N.J. Super. 326 (App.Div. 1983). A second source of "vested rights" is the judicially developed doctrine of equitable estoppel. See Virginia Construction Corp. v. Fairman, 39 N.J. 61, 70 (1962).
The branch of the "vested rights" doctrine which rests upon the Municipal Land Use Law is not relied upon by Timber since it did not acquire either subdivision or site plan approval. Rather, Timber must rely upon the judicially developed doctrine of equitable estoppel.
There are only two circumstances in which the courts of this State have concluded that a municipality may be barred under principles of equitable estoppel from applying an amended zoning ordinance to a landowner. One circumstance is where a building permit or similar municipal authorization has been issued and there has been substantial reliance upon that authorization. See, e.g., Gruber v. Raritan Tp., 39 N.J. 1 (1962); Tremarco Corp. v. Garzio, supra. The second is where a trial court has entered judgment ordering municipal approval for a particular land use and there are special equities which militate against application of a subsequently adopted ordinance to bar that use. See, e.g., Kruvant v. Cedar Grove, supra; Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203, 217-223 (App.Div. 1981), certif. den., 87 N.J. 428 (1981).
Even in these two categories of cases, the New Jersey courts have barred municipalities from invoking newly adopted zoning ordinances to prevent proposed uses of property only in very compelling circumstances. Thus, in Gruber v. Raritan Tp., supra, informal and formal approvals were obtained for a residential development, a performance bond was filed, model homes were constructed, and curbing, sidewalks utility poles, road grading and graveling were completed, before the municipality adopted a zoning ordinance which prohibited residences *279 in the zone where the developer's property was located. The court held that "on elemental considerations of justice" the developer should be permitted to complete at least part of its project. Id., 39 N.J. at 19. In Tremarco Corp. v. Garzio, supra, the building inspector issued a valid building permit for the construction of a public garage and gasoline filling station and in reliance on that permit plaintiff purchased the property in question, expended money for a survey and architectural work, entered into a contract to construct the facility and had gasoline storage tanks delivered to the premises for installation, before the zoning ordinance was amended. In these circumstances, the court concluded that "the equities strongly predominate in favor of plaintiff." Id., 32 N.J. at 458 In Kruvant v. Cedar Grove, supra, a developer twice successfully challenged the validity of zoning ordinances which prevented construction of a garden apartment complex on his property. When the municipality attempted a third rezoning of the developer's property during the pendency of litigation challenging the validity of the second rezoning and in violation of a court order establishing a deadline for any rezoning, the court concluded that "the equities warrant and judicial integrity justifies" ignoring the most recent zoning amendment in determining the propriety of the developer's project. Id., 82 N.J. at 445.
In cases where such extraordinary circumstances have not been demonstrated, the New Jersey courts have reaffirmed the continuing authority of a municipality to subject all property within its jurisdiction to a zoning amendment even though individual property owners may have incurred substantial expenses in reliance upon the prior zoning ordinance. Thus, in Donadio v. Cunningham, supra, Justice Hall observed:
The paramount public interest dictates that no equity should arise in an owner's favor and that he should have no right of reliance until the municipality has, by issuing a valid permit, officially approved the project at the first level of authority. [58 N.J. at 322.]
Consistent with this restrictive view of the "vested rights" doctrine, our courts have rejected claims to exemption from *280 later changes in zoning ordinances based upon a site plan approval. Hill Homeowners Ass'n v. Passaic, 156 N.J. Super. 505 (App.Div. 1978); a use variance, Dimitrov v. Carlson, 138 N.J. Super. 52 (App.Div. 1975), certif. den. 70 N.J. 275 (1976); and a final subdivision approval, Sandler v. Springfield Tp. Bd. of Adjustment, 113 N.J. Super. 333 (App.Div. 1971). While these decisions seem to leave open the possibility that municipal action short of the issuance of a building permit could encourage reliance and confer vested rights, they indicate that such a finding could be made only in an exceptional situation. In any event, there is no decision which states that vested rights can be acquired without either official municipal action or the judgment of a court.
In arguing that the "vested rights" doctrine should be applied more broadly, Timber relies primarily upon the following dictum in Urban Farms, Inc. v. Franklin Lakes, supra:
We do not regard the issuance of a building permit as a sine qua non to the applicability of the substantial reliance doctrine. See Kruvant v. Cedar Grove, 82 N.J. 435 (1980). Rather, we are of the view that its applicability requires a weighing of such factors as the nature, extent and degree of the public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded, the extent to which his undertaking has been at any point approved or encouraged by official municipal action, and the extent to which, under the circumstances and as objectively determined, he should have been aware that the municipality would be likely to change the ordinance prior to actual commencement of construction. [Id., 179 N.J. Super. at 221.]
This passage, taken out of context, might support the conclusion that a landowner could secure a "vested right" in an existing zoning ordinance without either the judgment of a court or official municipal action authorizing a particular use of land. However, the question addressed by this part of the Urban Farms opinion is whether there are circumstances in which a zoning amendment adopted in response to the judgment of a trial court may be denied retroactive effect. The court answered this question affirmatively, and the passage relied upon by Timber outlines the criteria for determining *281 when those circumstances exist. The fact that the court was addressing itself solely to this narrow issue  and not undertaking to broaden the scope of the "vested rights" doctrine in other contexts  is indicated by the final sentence of the passage, which says:
These are the factors constituting the developer's special equities, and if they outweigh the public interest concerns, they should also operate to bar post judgment retroactivity of a zoning ordinance amendment. [Id. at 221-222, emphasis supplied.]
Timber's "vested rights" claim does not rest upon the judgment of a court or official municipal action. Rather, it is based solely on the alleged fact that the prior zoning ordinance permitted their proposed project and that the planning board and various municipal officials encouraged Timber to undertake the preliminary steps required for approval of the project. However, no matter how vigorous the encouragement or how extensive Timber's activities in pursuing the project in reliance upon that encouragement, the above discussion demonstrates that defendant municipality remained free to change its view of the zoning appropriate to the district where Timber's property is located.
One final reason for rejecting Timber's "vested rights" claim should be mentioned. The Municipal Land Use Law, enacted in 1975, N.J.S.A. 40:55D-1 et seq., deals in a more comprehensive fashion than its predecessor, the Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq., with the circumstances under which a developer may acquire "vested rights" as a result of a particular type of municipal approval. The new statute deals more specifically with the effect of preliminary site plan or subdivision approval, compare N.J.S.A. 40:55D-49 with N.J.S.A. 40:55-1.18, and it sets forth for the first time the effects of site plan and final subdivision approval, N.J.S.A. 40:55D-47, N.J.S.A. 40:55D-52. Also, by a 1979 amendment, L. 1979, c. 216, N.J.S.A. 40:55D-10.1, it authorizes conceptual approval of a development plan, but specifies that the planning board "shall not be bound" by any such approval. This more comprehensive treatment *282 in the Municipal Land Use Law of the consequences of various forms of municipal approval reduces the scope of judicial discretion to articulate these consequences in the face of legislative silence. See YM-YWHA of Bergen Cty. v. Washington Tp., 192 N.J. Super. 340, 348-49 (App.Div. 1983).
Within the framework of the Municipal Land Use Law, the official response of Chester to Timber's application did not go beyond conceptual approval, which the Legislature has expressly said shall not be binding. Since Timber's application never reached the state of preliminary site plan or subdivision approval, the prerequisite for a conclusion that Timber acquired a "vested right" in its project is absent and summary judgment in favor of defendants will be granted on this claim.[2]

II  Federal Civil Rights Act (42 U.S.C. § 1983)
The adoption or amendment of a zoning ordinance constitutes action "under color of state law," which may provide the basis of a claim for money damages under 42 U.S.C. § 1983 if a violation of federal constitutional rights can be shown. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). However, certain defendants enjoy qualified or absolute immunity from liability for damages under § 1983. See Owen v. City of Independence, 445 U.S. 622, 637-638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). One form of absolute immunity is for official action taken in a legislative capacity. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).
In Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra, the Court held that legislative immunity is enjoyed not only by state legislators but also members of a regional planning agency. Quoting from Tenney v. Brandhove, *283 supra, the Court said that the rationale for absolute legislative immunity is that the proper discharge of legislative duties would be inhibited if legislators "could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives," and it concluded that "[t]his reasoning is equally applicable to federal, state and regional legislators." 440 U.S. at 405, 99 S.Ct. at 1179.
Although the Court refrained from extending this holding to members of local governing bodies, Id. at 404, n. 26, 99 S.Ct. at 1178, n. 26, every United States Circuit Court of Appeals which has addressed this issue since Lake Country Estates has concluded that the reasoning of the opinion extends to municipal legislators. Aitchison v. Raffiani, 708 F.2d 96 (3rd Cir.1983); Reed v. Village of Shorewood, 704 F.2d 943, 952-953 (7th Cir.1983); Kuzinich v. Santa Clara Cty. 689 F.2d 1345 (9th Cir.1982); Hernandez v. City of Lafayette, 643 F.2d 1188 (5th Cir.1981), cert. den. 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); Bruce v. Riddle, 631 F.2d 272 (4th Cir.1980); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir.1980). See also T & M Homes, Inc. v. Mansfield Tp., 162 N.J. Super. 497 (Law Div. 1978), which reached the same conclusion prior to Lake Country Estates. In Gorman Towers the court said:
We perceive no material distinction between the need for insulated legislative decision making at the state or regional level and a corresponding need at the municipal level. [626 F.2d at 612.]
The court also pointed out, quoting from Ligon v. Maryland, 448 F. Supp. 935, 947 (D.Md. 1977), that the need for absolute legislative immunity is especially strong in the area of local land use control:
[I]n the area of land use, where decisions may have an immediate quantifiable impact on both the value and development of property, local legislators should be free to act solely for the public good without the specter of personal liability with the passage of each zoning ordinance. [626 F.2d at 612.]
*284 Following this unbroken line of authority since Lake Country Estates, this court concludes that municipal officials enjoy absolute immunity from suit for money damages pursuant to § 1983 when acting in a legislative capacity.[3]
This absolute immunity entitles the members of the Chester Township governing body and planning board to summary judgment on the § 1983 claims which seek to impose individual monetary liability. Apart from conclusionary legal labels, the only acts of these defendants alleged in the complaint are that the members of the planning board recommended, and the members of the municipal council voted for, an amendment to the zoning ordinance which abolished the "Apartment/Townhouse" zone of the municipality. The legislative character of either recommending or voting for a change in the permitted uses in a zoning district is well established. Fralin & Waldron, Inc. v. Henrico Cty., 474 F. Supp. 1315 (E.D.Va. 1979); Bruce v. Riddle, supra; see also Girard v. Alverez, 144 N.J. Super. 259 (App.Div. 1976). Although it is alleged that the defendants, in abolishing the "Apartment/Townhouse" zone, were improperly motivated by a desire to block Timber's development plans, one of the essential purposes of affording absolute legislative immunity is to prevent judicial inquiry into legislative motives. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra; Tenney v. Brandhove, supra; Aitchison v. Raffiani, supra.
Moreover, there is no allegation that Timber's proposed project remained viable once the Apartment/Townhouse zone was abolished. Hence, there is no basis for a claim that any acts of the municipal officials independent of the adoption of the zoning change adversely impacted upon Timber. See Hernandez v. City of Lafayette, supra, 643 F.2d at 1194, n. 12.
*285 Therefore, the individual defendants are entitled to summary judgment on the § 1983 claims for money damages.[4]

III  Tort Claims Act

The New Jersey Tort Claims Act extends immunity to public employees for legislative and judicial activities. N.J.S.A. 59:3-2(b) provides that:
A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.
N.J.S.A. 59:2-3(b) affords the same immunity to public entities. In Girard v. Alverez, supra, 144 N.J. Super. at 262 the Appellate Division held that the process of effecting a change in zoning is legislative in nature and therefore falls within the immunity conferred upon public employees by N.J.S.A. 59:3-2(b). Public entities would be entitled to the same immunity under N.J.S.A. 59:2-3(b) since the operative language of the two sections is the same.
The complaint alleges that defendants interfered with contractual relations between plaintiff Timber, as contract purchaser of the subject property, and plaintiffs John and Stephanie Hardin, as contract sellers, by "wrongfully, knowingly, intentionally, maliciously and without reasonable justification or excuse" improperly voting to abolish the "Apartment/Townhouse" zone. As previously discussed in connection with the § 1983 claim, this action was purely legislative in character and therefore falls within N.J.S.A. 59:2-3(b) and N.J.S.A. 59:3-2(b).
Nevertheless, plaintiffs argue that the individual defendants remain amenable to suit pursuant to N.J.S.A. 59:3-14(a), which provides that:

*286 Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
Although there are no allegations which could support a conclusion that any of the municipal officials acted outside the scope of their employment or committed a crime or actual fraud, there are allegations which could support a conclusion that they were guilty of "actual malice" or willful misconduct." Viewed most favorably to plaintiffs, the allegations of the complaint and of the affidavits relied upon in opposition to this motion might support an inference that the municipal officials amended the zoning ordinance with knowledge that it was invalid for the sole purpose of impeding Timber's development project and thereby interfered with the contractual relations between plaintiffs, as contract sellers and purchasers. Such a finding could support a conclusion that the individual defendants were guilty of "actual malice," cf. Bock v. Plainfield Courier-News, 45 N.J. Super. 302, 312-313 (App.Div. 1957), or "willful misconduct," cf. Tabor v. O'Grady, 61 N.J. Super. 446, 454 (App.Div. 1960). Therefore, it is necessary to determine whether, despite the broad immunity afforded by N.J.S.A. 59:3-2(b) for legislative actions, a tort action may be pursued against a municipal legislator pursuant to N.J.S.A. 59:3-14(a) for "actual malice" or "willful misconduct" in the adoption of an ordinance.
N.J.S.A. 59:3-14(a) is not phrased in terms of imposing any liability upon a public employee. It simply says that "[n]othing in this act shall exonerate a public employee from liability" for, among other things, "actual malice" or "willful misconduct." [Emphasis supplied.] Therefore, the source of any liability of a public employee must be found outside of N.J.S.A. 59:3-14(a).
The Tort Claims Act does not contain detailed provisions dealing with intentional torts such as interference with contractual relations. Rather, as suggested by the legislative declaration "that public entities shall only be liable for their negligence *287 within the limitations of [the Tort Claims Act]," N.J.S.A. 59:1-2, the detailed provisions of the Act deal solely with the liability of public entities and public employees for negligence. However, with respect to intentional torts, the Act basically retains whatever liabilities and immunities a public employee would have had at common law. N.J.S.A. 59:3-1(a) states that "[e]xcept as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person." This liability is qualified by N.J.S.A. 59:3-1(b), which states that "[t]he liability of a public employee established by this act is subject to any immunity of a public employee provided by law." Moreover, N.J.S.A. 59:1-3 defines "law" to include "decisional law applicable within this State." Therefore, to determine whether a municipal official may be subject to tort liability for adopting an ordinance, it is appropriate to consider decisional law before enactment of the Tort Claims Act. Cf. Burke v. Deiner, 190 N.J. Super. 382, 391 (App.Div. 1983) (holding that municipal officials could be subject to suit under N.J.S.A. 59:3-14 for "willful misconduct" in connection with "administrative action of a legislative or judicial nature" when they would have enjoyed immunity prior to enactment of the Tort Claims Act for the type of activity involved only upon a showing of "good faith" conduct); see also Report of the Attorney General's Task Force on Sovereign Immunity, at 211 (1972) (containing the legislative recommendations on which the Tort Claims Act was based, which points out that the open-ended language of N.J.S.A. 59:2-2, a section substantially similar to N.J.S.A. 59:3-1, "permits the courts to continue to recognize common law immunities to the extent they are consistent with the provisions of this act").
The research of the court has disclosed only two New Jersey decisions prior to enactment of the Tort Claims Act in which the immunity from monetary liability of individual legislators was directly implicated. Cole v. Richards, 108 N.J.L. 356 (E. & A. 1932); Van Riper v. Tumulty, 26 N.J. Misc. 37, 56 A.2d 611 (Sup.Ct. 1948). Both decisions hold that a state legislator enjoys *288 absolute immunity from suit under the "speech or debate" clause of the New Jersey Constitution (N.J. Const. (1844), Art. IV, § IV, par. 8; see also N.J. Const. (1947), Art. IV, § IV, par. 9) for statements made in the Legislature. Other pre-Tort Claims Act decisions involved solely the liability of a public entity for the enactment of legislation. See, e.g., Visidor v. Cliffside Park, 48 N.J. 214 (1966), cert. den. 386 U.S. 972, 87 S.Ct. 1166, 18 L.Ed.2d 132 (1967); Veling v. Ramsey, 94 N.J. Super. 459 (App.Div. 1967)), and hence did not provide the occasion for consideration by our courts of whether public officials could be subject to "civil liability for acts done within the sphere of legislative activity." Tenney v. Brandhove, supra, 341 U.S. at 376, 71 S.Ct. at 788.
Notwithstanding the absence of more definitive decisional authority in New Jersey, the existence of absolute immunity for state legislators at common law was generally accepted. See Tenney v. Brandhove, supra. The prevailing view was that this absolute immunity extended to municipal legislators. 2 F. Harper and F. James, The Law of Torts § 29.10 at 1639 (1956); W. Prosser, The Law of Torts § 132 at 988 (4th ed. 1971). But see Bruce v. Riddle, supra, 631 F.2d at 276. The only New Jersey case which considered the issue stated flatly that "the well-established rule at common law was one of absolute immunity for all legislators, regardless of level." T & M Homes, Inc. v. Mansfield Tp., supra, 162 N.J. Super. at 511. This view basically mirrors the conclusion of the lower Federal courts, adopted in part II of this opinion, that local legislators enjoy absolute immunity from suits for money damages pursuant to § 1983.
Although the issue is not free from doubt, this court is satisfied that the New Jersey courts would follow the common law rule, as stated in T & M Homes, Inc., and hold that municipal legislators enjoyed absolute immunity from individual monetary liability prior to enactment of the Tort Claims Act. Pursuant to N.J.S.A. 59:3-1(b), this immunity was preserved under the Tort Claims Act. Since the only action of the *289 individual defendants which could have had an adverse impact upon plaintiffs is the legislative act of abolishing the "Apartment/Townhouse" zone, summary judgment will be granted on the malicious interference with contractual relations claim.

IV  New Jersey Antitrust Act

N.J.S.A. 56:9-3 broadly states that "[e]very ... combination ... or conspiracy in restraint of trade or commerce, in this State, shall be unlawful." However, this provision is qualified by N.J.S.A. 56:9-5, which exempts certain organizations and activities from scrutiny under the New Jersey Antitrust Act. These exemptions include N.J.S.A. 56:9-5(c), which states in pertinent part that:
[The Antitrust Act] shall not apply to any activity directed, authorized or permitted by any law of this State that is in conflict or inconsistent with the provisions of this act....
The Supreme Court of New Jersey has twice held that N.J.S.A. 56:9-5(c) precludes an attack pursuant to the New Jersey Antitrust Act upon a regulation adopted by a state administrative agency pursuant to its enabling legislation. Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 335 (1981), app. dism. 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 564 (1978).
There is no meaningful distinction in the application of exemption from antitrust liability provided by N.J.S.A. 56:9-5(c) between a zoning ordinance and a state administrative regulation. The Municipal Land Use Law confers express authority upon a governing body to adopt a zoning ordinance, N.J.S.A. 40:55D-62(a), in the same manner as various enabling legislation delegates authority to state administrative agencies to adopt regulations. Therefore, the adoption of zoning ordinances by municipal governing bodies and of regulations by state administrative agencies are both activities "authorized or permitted by ... law of this State" and hence both fall within the exemption from antitrust liability provided by N.J.S.A. 56:9-5(c).
*290 In arguing that N.J.S.A. 56:9-5(c) is not controlling, plaintiffs point out that they have alleged in other counts of their complaint that the zoning amendment abolishing the "Apartment/Townhouse" zone is arbitrary and capricious, inconsistent with the Municipal Land Use Law and in violation of the New Jersey Constitution as construed in Mount Laurel II. Plaintiffs argue that if they prevail on one or more of these grounds of attack, then the Chester zoning ordinance would not be "authorized or permitted" by any law of this State, within the intent of N.J.S.A. 56:9-5(c).
However, any duly adopted municipal ordinance or state administrative regulation is subject to attack on the grounds that it is arbitrary and capricious, inconsistent with the applicable enabling legislation or unconstitutional. See, e.g., Dome Realty, Inc. v. Paterson, 83 N.J. 212 (1980); New Jersey Guild of Hearing Aid Dispensers v. Long, supra. If such an attack succeeds, this does not mean that the act of adopting the ordinance or regulation was not "authorized or permitted by any law of this State" and that the public entity responsible for the ordinance or regulation as well as its individual members are subject to monetary liability under the Antitrust Act. There is a well recognized distinction between an act of a governmental agency which is beyond its jurisdiction and an act which is within the jurisdiction of the agency but is found to be invalid. Summer Cottagers' Ass'n of Cape May v. Cape May, 19 N.J. 493, 504 (1955). This distinction is pertinent in the interpretation of N.J.S.A. 56:9-5(c). The "activity" of adopting a zoning ordinance is clearly within the jurisdiction of a planning board and a governing body and hence "authorized or permitted" by law. The mere fact that an ordinance or administrative regulation is subject to being set aside by a court does not mean that a public official has exceeded his authority in its adoption.
In addition, it should be noted that most land use ordinances and other economic regulations have arguable anti-competitive consequences. Therefore, if Timber's reading of N.J.S.A. 56:9-5(c) *291 were correct, an exposure to antitrust liability, including treble damages, see N.J.S.A. 56:9-12, would arise any time such an ordinance or regulation were adopted. The chilling effect that exposure would have upon the adoption of desirable regulations is a further reason to read N.J.S.A. 56:9-5(c) as barring any liability of a municipality or its officials under the Antitrust Act arising out of the adoption of a zoning ordinance.
A partial summary judgment in conformity with this opinion will be entered in favor of the defendants.
NOTES
[1] The motion also sought dismissal of various other counts on the grounds they had not been filed in a timely manner. These parts of the motion have been ruled upon previously by oral opinions.
[2] The circumstances of the zoning change still may be relevant on the claim that the current zoning of Timber's property is arbitrary and capricious. See Guaclides v. Englewood Cliffs, 11 N.J. Super. 405, 415-416 (App.Div. 1951).
[3] It is only individual municipal officials who enjoy this immunity, not a municipality. Owen v. City of Independence, supra. Therefore, it is conceded that at this stage of the litigation the claim for money damages under § 1983 against Chester remains viable.
[4] Timber conceded in its answer to the motion that punitive damages may not be sought against a municipality in an action under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Consequently, the part of the complaint seeking such relief also will be dismissed.